Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
**IMPACT FUND**
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone:    (510) 845-3473
Facsimile:    (510) 845-3654

Elizabeth Kristen (SBN 218227)
ekristen@legalaidatwork.org
**LEGAL AID AT WORK**
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone:    (415) 864-8848
Facsimile:    (415) 593-0096

David K. Willingham (SBN 198874)
dwillingham@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:    (213) 443-4433
Facsimile:    (213) 443-4310

*Attorneys for Plaintiffs (additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERRILL FARRELL, STEVEN EGLAND, JAMES GONZALES, JULIANNE "JULES" SOHN, STEPHAN "LILLY" STEFFANIDES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>                         v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE; LLOYD J. AUSTIN III, Secretary, United States Department of Defense, in his official capacity; CHRISTINE WORMUTH, Secretary, United States Army, in her official capacity; CARLOS DEL TORO, Secretary, United States Navy, in his official capacity; FRANK KENDALL, Secretary, United States Air Force, in his official capacity;<br><br>                    Defendants. | Case No. _____<br><br>CIVIL RIGHTS ACTION<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

I.   **NATURE OF THE CASE**

1.      In the Congressional Cemetery in Washington, DC stands the gravestone of Leonard Matlovich, an American Vietnam War veteran.  His gravestone reads: "When I was in the military they gave me a medal for killing two men and a discharge for loving one."  That is the plight of lesbian, gay, bisexual, transgender, queer/questioning, gender non-conforming, nonbinary, and intersex ("LGBTQ+") veterans discharged under "Don't Ask, Don't Tell" ("DADT") and its predecessor policies, the discriminatory impacts of which still have not been remedied over a decade after its official repeal.  The U.S. Armed Forces allows that discrimination to live on in the discharge papers carried by LGBTQ+ veterans, denying them privacy, benefits, and pride in their service.

2.      The U.S. Government has long acknowledged the vital role of military veterans and honored their incomparable sacrifices.   Across region, party affiliation, and presidential administration, government leaders speak with one voice when they describe the debt of gratitude our nation owes to its military veterans.

3.      In 1983, President Ronald Reagan declared that "veterans know better than anyone else the price of freedom, for they've suffered the scars of war.  We can offer them no better tribute than to protect what they have won for us.  That is our duty.  They have never let America down.  We will not let them down."

4.      In 1999, President Bill Clinton recognized that "we must also do more to be faithful to our veterans when their service is over.  President Theodore Roosevelt once said, anyone good enough to shed blood for his country is good enough to be given a square deal afterward."

5.      As recently as November 2022, Defendant Secretary to the U.S. Department of Defense Lloyd J. Austin III thanked veterans for "lending your talents to the United States military, you made us stronger and smarter.  By serving with courage and compassion, you set an example for the next generation, and by giving so much, you reminded us that this democracy is worth defending."

6.      Since repealing DADT in 2010, the Government has recognized and condemned the decades of discriminatory policies it enforced against LGBTQ+ veterans.

7.      Despite these acknowledgments, LGBTQ+ veterans—including Plaintiffs Sherrill Farrell, Steven Egland, James Gonzales, Jules Sohn, Lilly Steffanides, and thousands of others who

CLASS ACTION COMPLAINT                                                    CASE NO. _____

were involuntarily discharged under anti-LGBTQ+ policies—continue to combat the effects of this discrimination.

8.      Veterans who were discharged for their actual or perceived sexual orientation often received discharge paperwork, the Form DD-214, that (1) identifies their actual or perceived sexual orientation as the reason for their discharge, (2) burdens them with discharge rankings below Honorable, and (3) bars them from reenlisting.  Discharge paperwork bearing these markers carries the legacy of the anti-LGBTQ+ policies that the military has now disavowed.  The DD-214s issued to LGBTQ+ veterans upon discharge were discriminatory when issued and continue to violate these veterans' constitutional rights to this day.

9.      The discriminatory effects of these DD-214s are not in dispute.  On September 20, 2021, the Department of Veterans Affairs ("VA") Assistant Secretary for Public Affairs, Kayla Williams, published a blog post in which the VA "recognize[d] the trauma caused by the military's decades-long policy of discrimination against LGBTQ+ people" and represented that "the Biden administration and [VA] Secretary [Denis] McDonough are taking the steps necessary to begin addressing the pain that such policies have created."

10.     Over the decade following the repeal of DADT, the Government has taken no steps to correct this discrimination systematically.  Instead, it directs LGBTQ+ veterans to a pre-existing record correction and discharge upgrade process to individually request modification of their records. This widely criticized process requires veterans to initiate lengthy individual actions (including the extended process of obtaining military records) and demands that veterans prove discrimination occurred, even though the Government has already conceded both the discriminatory nature of its policies and the pernicious effects.

11.     Requiring LGBTQ+ veterans to first bear the stigma and discriminatory effects of carrying indicators of sexual orientation on their DD-214s, and then navigate a broken record correction process to seek resolution, violates their constitutional rights to equal protection, informational privacy, property, and due process protected by the Fourteenth and Fifth Amendments to the U.S. Constitution.

12.     The service of LGBTQ+ veterans deserves respect and honor equal to that of other

2

veterans. LGBTQ+ veterans are entitled to relief from the Government's ongoing discrimination through the removal of separation narratives and codes that identify their sexual orientation, modification of codes that prevent re-enlistment, and upgrades to their discharge statuses as needed.

**II.     JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs seek redress for violations of the Fourteenth and Fifth Amendments to the U.S. Constitution.

14.     The Court has authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, Rule 57 of the Federal Rules of Civil Procedure, and 5 U.S.C. § 702.

15.     Venue is proper in the U.S. District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1)(C) because at least one plaintiff resides in the District.

**III.    PARTIES**

16.     Plaintiff Sherrill Farrell (she/her pronouns) is a 62-year-old white veteran of the U.S. Navy. She lives in McQueeney, Texas. Plaintiff Farrell hoped to spend twenty years in the military and then to pursue higher education after completing her service. Plaintiff Farrell was discharged in 1986 after only ten months because of her sexual orientation. Plaintiff Farrell's sexual orientation is identified on her DD-214. She has a discharge status of Other Than Honorable. Plaintiff Farrell would be eligible for additional benefits with an Honorable discharge status.

17.     Plaintiff Steven Egland (he/him pronouns) is a 63-year-old African-American veteran of the U.S. Army. He lives in the Detroit, Michigan metropolitan area. After his first year of service stationed abroad in Wales, United Kingdom, Plaintiff Egland began preparing an application to Warrant Officer school with hopes of establishing a career as a military attaché. Plaintiff Egland was discharged in 1989 because of his sexual orientation. Plaintiff Egland's sexual orientation is identified on his DD-214. He has a discharge status of Honorable. Based on information and belief, Plaintiff Egland would be eligible for additional benefits if his narrative reason for discharge and discharge codes were corrected.

18.     Plaintiff James Gonzales (he/him pronouns) is a 58-year-old Latino veteran of the U.S. Navy. He lives in Los Angeles, California. As evidenced by the Navy's positive performance review

of Plaintiff Gonzales while in service, Plaintiff Gonzales demonstrated strong leadership skills as a Navy signalman and had the potential to become a petty officer.  However, Plaintiff Gonzales was discharged in 1986 because of his sexual orientation.  He has a discharge status of Other Than Honorable.  Plaintiff Gonzales would be eligible for additional benefits with an Honorable discharge status.

19.     Plaintiff Julianne "Jules" Sohn (she/they pronouns) is a 46-year-old Korean-American veteran of the U.S. Marine Corps.  She lives in Torrance, California.  After successfully completing Officer Candidate School, Plaintiff Sohn was deployed overseas to Okinawa, Japan as a Public Affairs Officer for a one-year unaccompanied tour.  She re-activated from Inactive Ready Reserves in 2005 for an overseas deployment to Iraq as part of a new Civil Affairs group.  After serving for eight years, Plaintiff Sohn was discharged in 2008 because of her sexual orientation.  Plaintiff Sohn's sexual orientation is identified on her discharge paperwork including, based on information and belief, her DD-214.  She has a discharge status of Honorable.

20.     Plaintiff Stephan "Lilly" Steffanides (they/them pronouns) is a 54-year-old white veteran of the U.S. Navy.  They live in San Francisco, California.  They enlisted in the U.S. Navy at nineteen years old following the century-long tradition of military service in their family.  Plaintiff Steffanides hoped for a lifetime military career.  Plaintiff Steffanides was discharged from the Navy in 1989 on the basis of their sexual orientation.  Plaintiff Steffanides's DD-214 identifies their sexual orientation. Plaintiff Steffanides has a discharge status of Other Than Honorable.  Plaintiff Steffanides would be eligible for additional benefits with an Honorable discharge status.

21.     Defendant Department of Defense is the federal department charged with coordinating and supervising all agencies and functions of the government relating to the military.  It was responsible for issuing and implementing DADT and related policies.  The organization and functions of the Department of Defense are set forth in Title 10 of the U.S. Code.  It exercises command and control over the Army, Marine Corps, Navy, Air Force, Space Force, and at certain times, the Coast Guard.

22.     Defendant Secretary Lloyd J. Austin III is the current U.S. Secretary of Defense, overseeing the Department of Defense.  Secretary Austin is named solely in his official capacity.

23.     Defendant Christine Wormuth is the current Secretary of the Army, overseeing all matters relating to the Department of the Army.  The U.S. Army conducts military operations on land. The Secretary of the Army has authority to correct military records of the U.S. Army pursuant to 10 U.S.C. § 1552(a) (2018) and 32 C.F.R. § 581.3 (2023).  Secretary Wormuth is named solely in her official capacity.

24.     Defendant Carlos Del Toro is the current Secretary of the Navy, overseeing all matters relating to the Department of the Navy.  The Department of the Navy conducts military operations at sea.  The Secretary of the Navy has the authority to correct military records of the U.S. Navy and U.S. Marine Corps pursuant to 10 U.S.C. § 1552(a) and 32 C.F.R. § 723.1 (2023).  Secretary Del Toro is named solely in his official capacity.

25.     Defendant Frank Kendall is the current Secretary of the Air Force, overseeing all matters relating to the Department of the Air Force.  The Department of the Air Force conducts military operations by air.  The Secretary of the Air Force has the authority to correct military records of the U.S. Air Force pursuant to 10 U.S.C. § 1552(a) and 32 C.F.R. § 865.0 (2023).  Secretary Kendall is named solely in his official capacity.

## IV.   FACTUAL ALLEGATIONS

### A.   The Government's History of Discrimination Against LGBTQ+ Service Members

26.     Through much of its history, the U.S. Armed Forces prohibited non-heterosexual people from serving openly in its ranks.  These intentionally discriminatory policies primarily affected LGBTQ+ service members.

27.     As early as World War I, the Armed Forces prosecuted same-sex sexual behavior. During this time, same sex sexual behavior between men was characterized as criminal behavior and punishable by imprisonment.  Between World War I and the end of World War II, some individual branches developed explicit policies excluding people from service on the basis of sexual orientation.

28.     In 1949, the Department of Defense established a uniform policy on "homosexuality." The memo announcing the policy stated: "[H]omosexual personnel, irrespective of sex, should not be permitted to serve in any branch of the Armed Services in any capacity, and prompt separation of

5

known homosexuals from the Armed Forces be made mandatory."

29.     In 1950, Congress created the Uniform Code of Military Justice to govern military discipline.  Article 125 of the Uniform Code prohibited "unnatural carnal copulation" by service members and was directed at lesbian and gay service members.

30.     In 1953, President Dwight Eisenhower signed Executive Order 10450, making "sexual perversion" a dismissible offense in all federal employment.  The Executive Order likewise targeted service members based on sexual orientation.

31.     In 1982, the Department of Defense set forth Directive 1332.14 and established mandatory discharge for service members who have "engaged in, attempted to engage in, or solicited another to engage in a homosexual act."  The Directive noted that "[t]he basis for separation may include preservice, prior service, or current service conduct or statements."  In 1986, the Department of Defense issued revised Directive 1332.30, extending Directive 1332.14 to military officers.

32.     In 1993, Congress passed, and President Bill Clinton signed into law, the policy known as DADT.  The law required the military to discharge service members who "engaged in, attempted to engage in, or solicited another to engage in a homosexual act," if they stated that they were "a homosexual or bisexual, or words to that effect," or if they "married or attempted to marry a person known to be of the same biological sex."

33.     According to the Department of Defense's May 12, 2023 response to Legal Aid at Work's 2021 Freedom of Information Act request, between October 1, 1980, and September 20, 2011, **35,801 veterans** received a discharge or separation from service "because of real or perceived homosexuality, homosexual conduct, sexual perversion, or any other related reason."  During the same time period, **29,177 veterans** received the following discharge statuses "because of real or perceived homosexuality, homosexual conduct, sexual perversion, or any other related reason":

- General Discharge Under Honorable Conditions: 18,729 veterans
- Other Than Honorable Discharge: 7,732 veterans
- Bad Conduct Discharge: 2,714 veterans
- Dishonorable Discharge: 2 veterans

34.     As a direct consequence of these discriminatory policies, tens of thousands of veterans

1   were ousted from their respective branches of the Armed Forces on the basis of their perceived or

2   actual LGBTQ+ status.

3       **B.    Defendants Memorialized the Government's Discriminatory Policies in**

4           **Veterans' DD-214s**

5       35.    Upon discharge, veterans receive, along with other discharge paperwork, a Form DD-

6   214.  They are instructed that it is the most important service record they will receive.  Every DD-214,

7   on its face, implores the recipient to "safeguard it."  The DD-214 contains a "character of service" or

8   discharge status, a "narrative reason for separation," a "separation code," and a "reenlistment code."

9   Plaintiff Steffanides's DD-214 is included below, with red annotations marking these relevant data

10  points.

11      36.    As can be seen in Plaintiff Steffanides's DD-214 below, they have been given a

12  discharge status (also known as a character of service designation) of "UNDER OTHER THAN

13  HONORABLE CONDITIONS," a separation code of "GRA," a reenlistment code of "RE-4," and a

14  narrative reason for separation that states "Homosexuality – engaged in, attempted to engage in, or

15  solicited another to engage in a homosexual act or acts."

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                              CASE NO. _____

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD SAFEGUARD IT

ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

DD FORM 214
1 JUL 79

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE

**CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY**

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO |
|---|---|---|
| STEFFANIDES, Stephan Michael | NAVY – USN | |

| 4a. GRADE, RATE OR RANK | 4b. PAY GRADE | 5. DATE OF BIRTH | 6. PLACE OF ENTRY INTO ACTIVE DUTY |
|---|---|---|---|
| AZAR | X1 | | OAKLAND, CA |

| 7. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8. STATION WHERE SEPARATED |
|---|---|
| USS ABRAHAM LINCOLN (CVN 72) | USS ABRAHAM LINCOLN (CVN 72) at NORFOLK VA |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE |
|---|---|
| NA | AMOUNT $ .000   NONE |

| 11. PRIMARY SPECIALTY NUMBER, TITLE AND YEARS AND MONTHS IN SPECIALTY (Additional specialty numbers and titles involving periods of one or more years) | | 12. RECORD OF SERVICE | YEAR(s) | MON (s) | DAY (s) |
|---|---|---|---|---|---|
| AZ – 0000 | | a. Date Entered AD This Period | 88 | SEP | 28 |
| | | b. Separation Date This Period | 89 | DEC | 22 |
| | | c. Net Active Service This Period | 01 | 02 | 28 |
| | | d. Total Prior Active Service | 00 | 00 | 00 |
| | | e. Total Prior Inactive Service | 00 | 00 | 06 |
| | | f. Foreign Service | 00 | 00 | 00 |
| | | g. Sea Service | 00 | 07 | 22 |
| | | h. Effective Date of Pay Grade | 89 | AUG | 25 |
| | | i. Reserve Oblig. Term. Date | NA | | |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service)

14. MILITARY EDUCATION (Course Title, number weeks, and month and year completed)
Recruit Training, 8 weeks, DEC 89; AZ Class "A" School, 8 weeks, FEB 89;

| 15. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | YES [X] NO | 16. HIGH SCHOOL GRADUATE OR EQUIVALENT [X] YES   NO | 17. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|

18. REMARKS
Medical and Dental examination completed on 89DEC20 90 days within discharge from Active Duty.

| 19. MAILING ADDRESS AFTER SEPARATION | 20. MEMBER REQUESTS COPY 6 BE SENT TO CA DIR. OF VET AFFAIRS   YES [X] NO |
|---|---|

| 21. SIGNATURE OF MEMBER BEING SEPARATED | 22. TYPED NAME, GRADE, TITLE AND SIGNATURE OF OFFICIAL AUTHORIZED TO SIGN |
|---|---|
| | "J" "B" GOODWIN, PNC, USN, ASSTPERSOFF BY DIR CO |

SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Includes upgrades) |
|---|---|
| Discharged | UNDER OTHER THAN HONORABLE CONDITIONS |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENLISTMENT CODE |
|---|---|---|
| MILPERSMAN 3630400 | GRA | RE-4 |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| HOMOSEXUALITY – engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts |

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| TL: 89APR17 to 89APR30 | INITIALS |

S/N 0102-LF-000-2140

SERVICE - 7

8

CLASS ACTION COMPLAINT                                          CASE NO. _____

37.     A service member's "character of service" contains one of the following discharge statuses:

- Honorable Discharge;
- General Discharge Under Honorable Conditions;
- Other Than Honorable Discharge;
- Uncharacterized Discharge, or Entry-level Separation;
- Medical Separation;
- Separation For Convenience of the Government;
- Bad Conduct Discharge; or
- Dishonorable Discharge.

38.     A service member's "narrative reason for separation" provides a description of why the service member's service ended.  These narratives vary, but for veterans discharged for their perceived or actual sexual orientation, this "narrative reason for separation" often states they were discharged because of "homosexuality," "homosexual admission," "homosexual conduct," "attempt to engage in homosexual conduct," "homosexual marriage or attempted marriage," "propensity to engage in homosexual acts," "sexual orientation," or "bisexual[ity]," among other reasons that reference sexual orientation.

39.     Every DD-214 also includes a "separation code," which indicates additional separation information—from "mental disorder" to "hardship" to "pregnancy" to "misconduct."  For service members discharged for perceived or actual sexual orientation, their DD-214s often contain a separation code associated with sexual orientation, such as "homosexuality," "homosexual conduct," or "sexual perversion."  The separation codes are easily decoded with a quick search on the internet to find out their meaning and include:

| Separation Code | Stated Meaning |
|---|---|
| BLC | Homosexuality |
| BML | Homosexuality |

CLASS ACTION COMPLAINT                                      CASE NO. _____

| Separation Code | Stated Meaning |
|---|---|
| BRA | Homosexual Conduct (Acts) |
| BRB | Homosexual Conduct (Statement) |
| BRC | Homosexual Conduct (Marriage or Attempted Marriage) |
| DKL | Misconduct (Sexual Perversion) |
| DLC | Homosexuality |
| GKC | Homosexuality |
| GKL | Misconduct (Sexual Perversion) |
| GLC | Homosexuality |
| GLL | Sexual Perversion |
| GML | Homosexuality |
| GRA | Homosexual Conduct (Acts) |
| GRB | Homosexual Conduct (Statement) |
| GRC | Homosexual Conduct (Marriage or Attempted Marriage) |
| HKL | Misconduct (Sexual Perversion) |
| HLC | Homosexuality |
| HRA | Homosexual Conduct (Acts) |
| HRB | Homosexual Conduct (Statement) |
| HRC | Homosexual Conduct (Marriage or Attempted Marriage) |
| HWL | Homosexuality |
| JB | Court Martial (Homosexual Conduct) |
| JJB | Court Martial (Homosexual Conduct) |
| JKC | Homosexuality |
| JKL | Misconduct (Sexual Perversion) |
| JLC | Homosexuality |
| JLL | Sexual Perversion |
| JMF | Sexual Perversion |

| Separation Code | Stated Meaning |
|---|---|
| JRA | Homosexual Conduct (Acts) |
| JRB | Homosexual Conduct (Statement) |
| JRC | Homosexual Conduct (Marriage or Attempted Marriage) |
| KL | Misconduct (Sexual Perversion) |
| KRA | Homosexual Conduct (Acts) |
| KRB | Homosexual Conduct (Statement) |
| KRC | Homosexual Conduct (Marriage or Attempted Marriage) |
| RA | Homosexual Conduct (Acts) |
| RC | Homosexual Conduct (Marriage or Attempted Marriage) |

40.     Finally, every DD-214 contains a "reenlistment code."  Reenlistment codes 1 through 4 (with subparts) indicate the veteran's ability to reenlist in military service after discharge.  A reenlistment code of RE-4 bars the veteran from reenlisting in the military unless they obtain an individual waiver.  RE-4 reenlistment codes were often given in conjunction with discriminatory narrative reasons for separation or separation codes.

41.     These narrative reasons for separation and separation codes that indicate actual or perceived "homosexuality" on veterans' DD-214s are permanent remnants of DADT and its predecessors.  They memorialize discharges based on actual or perceived "homosexuality."  The Government has acknowledged as much.  *See* Section IV.E, *infra*. Accordingly, the continued existence of these sexual-orientation related narratives and separation codes on a veterans' DD-214s is, in and of itself, continuously discriminatory.

42.     The Government's discriminatory dismissal of LGBTQ+ service members on the basis of their actual or perceived "homosexuality" was unconstitutional.  Likewise, the Government's issuance of DD-214 forms with discriminatory narrative reasons for separation, separation codes, and reenlistment bars is unconstitutional.  LGBTQ+ veterans are not treated equally to other veterans, who are issued dismissal paperwork free of references to their sexual orientation.

C.      **The Government's Ongoing Discriminatory Treatment of LGBTQ+ Veterans Has Wide-Ranging Ramifications**

43.     The Government's discriminatory discharges and resulting discharge paperwork have ripple effects throughout the lives of LGBTQ+ veterans.

44.     These discriminatory discharges and resulting discriminatory DD-214s affect veterans on a deeply personal level. Plaintiff Sohn, who has worked in law enforcement for the majority of her adult life, was notified by a Colonel that she was being investigated for allegedly violating DADT. During this call, Plaintiff Sohn was notified of her rights under Article 31 of the Uniform Code of Military Justice, the military's functional equivalent to Miranda rights. Despite her exemplary record and numerous accolades over her eight years of service, Plaintiff Sohn was made to feel like a criminal, investigated, and then discharged solely because of her sexual orientation. Plaintiff Farrell was never given the chance to prove that she was committed to and capable of the kind of esteemed military career her father and grandfather had before her. Plaintiff Gonzales felt unable to tell his family—including his father, a Marine—how or why he was discharged and still finds celebrations like Veteran's Day and Memorial Day to be particularly painful reminders of the circumstances surrounding his discharge.

45.     Discriminatory DD-214s further isolate LGBTQ+ veterans from the veteran community, which is typically an important source of social and emotional support among those with shared lived experiences. For example, Plaintiffs Gonzales and Egland have avoided associating with veterans' groups or communicating with any individuals with whom they served, to avoid discussions pertaining to their times in the service, the circumstances surrounding their discharges, and their discharge statuses.

46.     LGBTQ+ veterans with discriminatory DD-214s are deprived of society's admiration for their service. In addition to federally issued benefits—discussed further below—state and local governments and non-governmental entities commonly offer veterans special benefits as a symbol of their admiration.

47.     For example, in some states, veterans' service records can replace requisite training for other forms of licensure, like private investigation work or security work. Likewise, many states

provide veterans the opportunity to have a veteran designation on their state ID or driver's license. Plaintiff Farrell frequently encounters veterans with this designation on their driver's licenses, as Texas offers this among its many state-sponsored benefits for veterans.  Every time Plaintiff Farrell meets someone with this designation, she thanks them for their service.  This designation requires an Honorable discharge or a General Discharge Under Honorable Conditions, meaning that Plaintiff Farrell cannot receive this symbol on her own driver's license because of her discriminatory DD-214. If her discharge status is upgraded, Plaintiff Farrell plans to apply for this designation as a symbol of her service.

48.     Non-governmental entities offer a variety of benefits to veterans, including discounts at stores and restaurants.  These benefits typically require proof of service, which means a veteran with a discriminatory DD-214 will reveal their sexual orientation if they provide proof of military service.  Many LGBTQ+ veterans with a discharge status below Honorable are excluded altogether.

49.     These tangible benefits, representing the social support and sense of dignity accorded to veterans, are denied to those who are intentionally isolated after the Government's discriminatory discharge.  The harm of discriminatory DD-214s does not stop at the veterans' discharge.  It is pervasive and continues to harm a veteran's pride in service, honor, and sense of belonging among the veteran community and society at large.

**D.     The Government's Repeal of DADT**

50.     On December 15, 2010, Congress voted to repeal the law establishing DADT. President Barack Obama signed the bill on December 22, 2010, and the repeal became effective on September 20, 2011.

51.     In remarks given on December 22, 2010, then-Vice President Joe Biden stated that DADT "weaken[ed] our national security, diminished our ability to have military readiness, and violates the fundamental American principle of fairness and equality."  He added that repealing DADT "is both morally and militarily simply the right thing to do" and that repeal was "fully supported by those within the military who are charged with implementing it."

52.     Also on December 22, 2010, President Obama stated:

I want to speak directly to the gay men and women currently serving in our

CLASS ACTION COMPLAINT                                             CASE NO. _____

> military.  For a long time your service has demanded a particular kind of
> sacrifice.  You've been asked to carry the added burden of secrecy and isolation.
> And all the while, you've put your lives on the line for the freedoms and
> privileges of citizenship that are not fully granted to you.  You're not the first
> to have carried this burden, for while today marks the end of a particular
> struggle that has lasted almost two decades, this is a moment more than two
> centuries in the making.

53.     Upon the repeal of DADT, the Department of Defense issued policy guidance that applied to all military personnel serving in the Armed Forces.  The guidance dictated that "[s]ervice members will no longer be subject to administrative separation based solely on legal homosexual acts, a statement by a [s]ervice member that he or she is a homosexual or bisexual (or words to that effect), or marriage or attempted marriage to a person known to be of the same biological sex."  Moreover, any service member who was already being processed for separation or investigated based solely on "legal homosexual acts" had their "separation cancelled," and they "return[ed] to duty."  The guidance also required that any former service member who was discharged solely for legal "homosexual" acts be allowed to re-enter the Armed Forces.

54.     Concurrently, the Department of Defense released internal policies to partially address the effects of DADT and its precursor policies.  The Under Secretary of Defense for Personnel and Readiness, Dr. Clifford L. Stanley, issued a memorandum to the Secretaries of the Military Departments establishing that the baseline was to grant veterans' requests for discharge upgrades following the repeal of DADT.  In the memorandum, Secretary Stanley stated that as of the repeal date:

> Service [Discharge Review Boards] should normally grant requests to change
> the narrative reason for a discharge (the change should be to "Secretarial
> Authority" (Separation program Designator Code (SPD) code JFF)), requests
> to re-characterize the discharge to honorable, and/or requests to change the
> reentry code to an immediately-eligible-to-reenter category . . . when both of
> the following conditions are met: (1) the original discharge was based solely on
> DADT or a similar policy in place prior to enactment of DADT and (2) there
> were no aggravating factors in the record, such as misconduct.  Although each
> request must be evaluated on a case-by-case basis, the award of an honorable
> or general discharge should normally be considered to indicate the absence of
> aggravating factors.

55.     Secretary Stanley's memo did not modify the existing record correction and discharge upgrade process and, in the years following, only a relative handful of veterans have sought record corrections and discharge upgrades.

**E.**     **Government Leaders Acknowledge that Discriminatory Effects Remain**

56.     Since the repeal of DADT, members of Congress, government agencies, and state governments have acknowledged the continuing discriminatory effects of DD-214s containing indicators of sexual orientation.

57.     In 2014, the Restore Honor to Service Members Act (S. 1956) was introduced in the U.S. Senate and sought to "direct the Secretary of Defense to review the discharge characterization of former members of the Armed Forces who were discharged by reason of the sexual orientation of the member, and for other purposes." Among other provisions, it sought to ensure the review process was "simple and straightforward" and did not treat "consensual sexual conduct" as an "aggravating circumstance[s]" precluding a discharge upgrade. It did not become law.

58.     In September 2021, sixty-two Congressmembers introduced House Resolution 5170 for the express purpose of modifying title 38 of the U.S. Code to extend "to former members of the Armed Forces, discharged on the basis of sexual orientation or gender identity, certain benefits furnished by the Secretary of Veterans Affairs." As the bill's sponsor, Congressman Chris Pappas of New Hampshire, stated:

> Veterans and their families deserve our thanks and gratitude for their service and sacrifice. However, a double standard continues to persist for LGBTQ+ servicemembers and veterans who suffered from government-sponsored discriminatory policies simply because of who they are. As we near the tenth anniversary of the repeal of "Don't Ask, Don't Tell," it's long past time that these veterans are afforded the benefits they've rightfully earned defending our country . . . . This disparity threatens the health and wellbeing of LGBTQ+ veterans who are unable to access VA benefits, and it dishonors their service to our country. This legislation will help correct this injustice by guaranteeing VA benefits for LGBTQ+ veterans and ensuring they're able to receive the care they need.

59.     The failure of the current discharge upgrade process has become so acute that the VA, a federal agency distinct from the Department of Defense, announced its own makeshift solution with respect to the benefits that it administers. Citing the widespread experience of LGBTQ+ veterans that the discharge upgrade process is "onerous," the VA's Assistant Secretary for Public Affairs published a blog post on September 20, 2021, announcing that the VA would no longer deny VA-administered benefits to veterans with less than Honorable discharges if the reason for their discharge is related to sexual orientation, gender identity, or HIV status.

60.   To date, based on information and belief, the VA's policy change has not yet materialized.  There is no publicly available written guidance that identifies who is and who is not eligible for these benefits.  Until the policy change is implemented, veterans who were given discharges below Honorable based on their actual or perceived sexual orientation continue to require individualized review before they can receive benefits from the VA.  Moreover, changes at the VA will not address other benefits denied to veterans based on discharge status, including financial and educational benefits, veteran preference in federal hiring, and state benefits.  Nor do they provide corrections to the DD-214 or changes to discharge upgrades or reentry status.

61.   Similarly recognizing that the discharge upgrade process is unduly burdensome, the State of California passed a law in September 2022 establishing a grant program for local service providers to educate California veterans about discharge upgrades and assist qualifying California veterans in applying for discharge upgrades.  Assembly Bill No. 325 added language to California's Military and Veterans Code requiring the California Department of Veterans Affairs "to establish the Veteran's Military Discharge Upgrade Grant program to help fund service providers who, for free or at low cost, will educate veterans about discharge upgrades and assist qualifying veterans in filing discharge applications."  The program "may prioritize veteran recipients of the services, such as prioritizing those who are able to demonstrate their less than honorable characterization of service was connected to a mental health condition, traumatic brain injury, sexual assault or harassment, or sexual orientation."

**F.    The Effects of the Discriminatory DD-214s**

62.   The Government's continued failure to remediate the discriminatory effects of DD-214s containing indicators of sexual orientation, which touch on nearly every aspect of a veteran's life after service, constitutes ongoing discrimination and a deprivation of these veterans' constitutional rights.

63.   *Only* LGBTQ+ veterans with discriminatory DD-214s have their sexual orientation and information pertaining to consensual sexual activity and/or their private romantic lives and marriages on their DD-214s.

64.   The discriminatory DD-214s carry additional burdens for the Discharge Upgrade

16

1  Subclass (defined below) caused by the less than Honorable discharge status they received, which bars
2  them from significant benefits available to veterans, including GI Bill loans, healthcare, preferential
3  hiring, and more.

4      65.     Some, but certainly not all, harms caused by the Government's continued failure to
5  revise discriminatory DD-214s are discussed herein.

6                    **1.      Invasion of Privacy**

7      66.     The Government provides DD-214s to all veterans after their service concludes,
8  knowing that those papers will be the veterans' primary record of service. As such, the Government
9  knows or should know those papers are intended to be shown to third parties.

10     67.     For veterans discharged under DADT and its predecessor policies, the Government has
11 included their private information on their DD-214 by including, at a minimum, indicators of their
12 actual or perceived sexual orientation.  For some, the Government included additional private
13 information about those veterans' sexual activities and/or details about their personal lives.

14     68.     In contrast, heterosexual veterans do not have *any* indication of their sexuality and/or
15 details about their personal lives on their DD-214s.

16     69.     By including this private information on their proof of military service, the Government
17 has unnecessarily invaded these veterans' private lives and infringed their right to keep sexual and
18 relationship information private.  For these veterans, proving their military service can therefore have
19 the immediate effect of disclosing the veteran's sexual orientation (*i.e.*, outing them).

20     70.     When Plaintiff Egland returned home after discharge, he filed his DD-214 away and
21 largely did not use it or even look at it for decades.  He can still remember the few specific instances
22 when he removed his DD-214 from its file.  In his life since discharge, Plaintiff Egland has bypassed
23 opportunities for advantages based on his veteran status because he did not want to provide his DD-
24 214 and disclose his sexual orientation.

25     71.     Plaintiff Farrell was required to show her DD-214 to her employer as part of the
26 application process for her job.  Because her sexual orientation is listed on her DD-214, Plaintiff Farrell
27 did not have the choice other applicants had of whether or when to disclose her sexual orientation to
28 her employer.  Plaintiff Farrell is grateful to have an accepting work environment and understands

that, because of her DD-214, she would not have the option of not discussing her sexual orientation with her employer if she felt it would expose her to discrimination.

### 2.      Denial of Access to Benefits and Hiring Advantages

72.      Both state and federal governments have created a vast network of potential benefits for veterans including healthcare benefits, educational benefits, and financial benefits (*e.g.*, lending opportunities).  By design, these benefits touch virtually every aspect of veterans' lives.  Receipt of these benefits requires proving military service by disclosing a DD-214.  Many benefits depend upon the veteran's discharge status and other information provided on the veteran's DD-214.

73.      Discharge status is critically important for accessing these benefits.  An Honorable discharge entitles veterans to all available federal and state benefits, including healthcare benefits through VA hospitals, educational benefits through the GI Bill, housing benefits, unemployment benefits, and many others.  Anything less than an Honorable discharge often bars service members from access to benefits.  Thousands of veterans discharged for their actual or perceived sexual orientation often received a less than Honorable discharge or had their discharge flagged with separation codes publicly associated with "homosexuality," denying them benefits they rightfully earned based on their service.

### a.      Veterans' Healthcare Benefits

74.      Healthcare benefits are among the most critical benefits provided to veterans.  But veterans with discharge statuses below Honorable may be barred from receiving health care from the VA.

75.      If a veteran's discharge was not characterized as under Honorable conditions, then VA benefits are not available unless the VA determines the veteran's specific discharge was "under conditions other than dishonorable."  In other words, veterans lacking an Honorable discharge are generally ineligible for VA benefits, unless they seek a case-by-case determination from the VA that they are Honorable for VA purposes.

76.      Plaintiff Gonzales, for example, has been unable to obtain healthcare benefits through the VA.  Plaintiff Gonzales is HIV positive.  Though a veteran with this diagnosis would generally be eligible for ongoing care from the VA, Plaintiff Gonzales is ineligible for VA benefits because of his

discharge status.  Thus, for about thirty years, Plaintiff Gonzales has instead received sporadic medical care through a variety of nonprofit agencies.  The Navy's failure to upgrade his discharge status has thus resulted in inconsistent medical care, causing Plaintiff Gonzales's health to suffer.

### b.   Other Veterans' Benefits

77.   Eligible veterans can access valuable education benefits.  GI Bill benefits provide financial support to veterans to pay for college, graduate school, and training programs.  Both the Montgomery GI Bill program and the Post-9/11 GI Bill program require that a veteran's discharge characterization be Honorable.

78.   Plaintiff Gonzales, for example, was unable to pursue higher education because the Navy imposed on him an Other Than Honorable discharge on the basis of his sexual orientation. Plaintiff Gonzales had planned to pursue a bachelor's degree after his time in service.  However, because of his discharge status, Plaintiff Gonzales was not eligible for the GI Bill benefits he needed to afford college.

79.   Plaintiff Farrell also envisioned taking advantage of federal education benefits for veterans and pursuing higher education after her service.  However, because of her Other Than Honorable discharge status, she was also ineligible for the GI Bill benefits she needed to afford college. Plaintiff Farrell intends to apply for various veterans' benefits if she receives a discharge upgrade.

80.   For other programs, including compensation benefits, pension benefits, home loan benefits, Service-Disabled Veterans Insurance, and Veterans' Mortgage Life Insurance, a veteran's discharge characterization must be Honorable, Under Honorable Conditions, or General.  A veteran's less than Honorable discharge can bar them from accessing these key services.

81.   Likewise, veterans' rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 also only attach if they have an Honorable, Under Honorable Conditions, or General discharge.  Many other laws that provide benefits to veterans or their families are impacted by the veteran's discharge status.  For example, a family member who wants to provide care for an injured service member can only take job-protected leave under the Family and Medical Leave Act to provide such care when the veteran has received an Honorable discharge.

82.   Plaintiff Egland sought a VA home loan in 2021, which was denied in part because of

CLASS ACTION COMPLAINT                                                          CASE NO. _____

his discriminatory discharge.  The VA told him he would have been eligible with fewer than twenty-four months of service if he were discharged for hardship, at the convenience of the government, in a reduction in force, or for a medical condition or service-connected disability.  But, according to the VA, he could not be approved for a home loan with fewer than twenty-four months of service and a narrative reason for service that read "admission of homosexuality/bisexuality."

83.    Plaintiff Steffanides sought assistance from a veteran affairs organization when they were experiencing homelessness.  They were told they did not qualify for temporary housing because of their discharge status and because their DD-214 included a narrative reason that read "Homosexuality – engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts."  For nearly twenty-four years, Plaintiff Steffanides experienced homelessness and lived on the streets.

### c.    Veterans' Future Employment

84.    When entering the job market after their discharge, veterans are often asked on job applications whether they served in the military and their discharge status.  Accordingly, to submit an employment application, veterans with discriminatory DD-214s must either (1) include their time in the service and their discharge status through disclosure of their DD-214s—necessarily disclosing their sexual orientation—or (2) leave resume gaps to avoid disclosing private information that their prospective employer would otherwise not be privy to.

85.    Veterans with discriminatory DD-214s also lose out on hiring preferences given to other veterans.  For example, the federal government maintains a formal veterans' preference policy prioritizing the applications of eligible veterans over other job seekers for new appointments in the competitive service (federal government positions subject to the civil service laws) and many positions in the excepted service (for which federal agencies set their own qualification requirements and which are not subject to the civil service laws).  The Federal Office of Personnel Management has characterized veterans' preference policies as a recognition of veterans' sacrifice and "the economic loss suffered by citizens who have served their country in uniform," and stated that such policies "restore[] veterans to a favorable competitive position for Government employment."  These jobs ask for copies of the veteran's DD-214.  Veterans' preference is available only to veterans discharged

"under honorable conditions."

86.     The vast majority of state governments likewise have preferential hiring policies for veterans.  These also require disclosure of the DD-214 and are only for those with an Honorable discharge.

87.     All Sexual Orientation Indicator Class members must disclose their sexual orientation to take advantage of this benefit.  And many LGBTQ+ veterans who received a discharge status below Honorable—but suffered the same economic loss from their service—are deprived of an expressly codified employment advantage in nearly every government sector.

88.     For example, Plaintiff Egland has never shared his DD-214 with his employers because it identifies his sexual orientation.  Starting with his first job after discharge, he has left his military service off of his employment applications because he did not want to show his DD-214.  He continued to withhold his DD-214 after he began teaching, even though school districts often provide veterans with extra years of salary credit and a higher salary.  He never took advantage of the additional pay because he did not want to submit his DD-214 to the school district.

### 3.     Discharge Upgrade Process

89.     By statute, there are two ways veterans can obtain records corrections and discharge upgrades—individually by each veteran's own initiative or as a group by Defendants' initiative.

90.     A veteran who seeks to change the narrative reason for their discharge or the discharge code, recharacterize their discharge, or change the re-enlistment code on their DD-214 generally must submit a request to the Discharge Review Board or Board for Correction of Military Records for their branch of military service.  The process is authorized by 10 U.S.C. §§ 1552-53 and is substantially similar for each branch of the Armed Forces.  This process and the hurdles it presents are discussed further below.

91.     Alternately, the Secretaries "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  "[S]uch corrections shall be made by the Secretary acting through" the Boards for Correction of Military Records.  *Id.*  The Secretaries may act entirely independently, however, "in the case of the correction of a military record announcing a decision that a person is not eligible to

1   enlist (or reenlist) . . . if the correction is favorable to the person concerned." *Id.* at § 1552(a)(2).

2   92.   The statute also provides the Secretaries of each Military Department with the ability

3   to independently "file a request for correction of a military record only if the request is made on behalf

4   of a group of members or former members of the armed forces who were similarly harmed by the

5   same error or injustice." 10 U.S.C. § 1552(b).

6   93.   Formal Department of Defense Instruction provides that "[t]he objective of a discharge

7   review is to examine the propriety and equity of the applicant's discharge." DODI 1332.28, Encl. 4,

8   ¶ E4.1 (2004). Discharges are deemed inequitable when "it is determined that the policies and

9   procedures under which the applicant was discharged differ in material respects from those currently

10  applicable on a Service-wide basis to discharges of the type under consideration[.]" *Id.* at E4.3.1. This

11  instruction properly anticipated that changing societal norms could turn previously accepted practices

12  into modern injustices.

13  94.   The Government thus has provided mechanisms to address the discriminatory

14  discharge records issued under DADT and predecessor policies through widespread record corrections

15  initiated by the Secretaries, Boards for Correction of Military Records, and/or Discharge Review

16  Boards themselves, without placing additional burdens on the veterans harmed. Defendants have

17  failed to exercise that mechanism and correct these discriminatory discharge records on their own

18  initiative, instead requiring veterans to individually apply for records corrections.

19  95.   The existing system for veterans to seek record corrections is plagued by significant

20  hurdles that uniquely burden veterans seeking corrections related to DADT and predecessor policies.

21  Veterans face (1) lengthy delays in the correction process and financial burdens; (2) evidentiary

22  burdens that must be carried by the individual applicant; (3) complicated and intimidating application

23  processes; and (4) stigma, isolation, and re-traumatization resulting from the individualized process.

24  96.   ***Delays in the Correction Process and Financial Burdens***. Before initiating the

25  correction process, veterans must obtain copies of relevant military personnel and/or medical records.

26  While veterans are issued a DD-214 upon discharge, many have misplaced it in the years after

27  discharge. This is particularly true for veterans who received discharges below Honorable and have

28  been unable to apply for benefits. Many veterans who were traumatized by their discharge process

1  and denied access to veterans' benefits did not retain their discharge paperwork.

2      97.     Veterans who need to obtain a new copy of their DD-214 and other relevant records

3  must file a request with a different agency, the National Personnel Records Center in St. Louis,

4  Missouri.  The process takes months, if not years.  The delay was further exacerbated by the COVID-

5  19 pandemic.  During the pandemic, the Records Center operated at a significantly reduced capacity

6  and only processed emergency requests starting from the beginning of the pandemic until normal

7  operations resumed on March 7, 2022.

8      98.     In addition, veterans who avail themselves of the record correction process must spend

9  countless hours preparing their application packages and may even need to hire legal counsel at their

10  own expense to help them navigate the onerous process.  They are often met with a painfully slow

11  process that can extend from several months to several years.

12      99.     Plaintiff Gonzales did not retain his DD-214s or other military discharge documents

13  after his discharge.  Plaintiff Gonzales filed a request with the National Personnel Records Center on

14  August 5, 2022 and did not receive a copy of his military records until July 2023.

15      100.    Plaintiff Egland kept his DD-214 after discharge but filed it away in his home and can

16  recall taking it out only three times over the past thirty years.  He did not retain any other military

17  records.  During President Biden's campaign for president in 2019, Plaintiff Egland heard President

18  Biden talk about the military's discrimination against LGBTQ+ service members and veterans and

19  learned for the first time that veterans could get their DD-214s updated to remove references to sexual

20  orientation.  He requested a copy of his military record in fall 2019 with the assistance of a nonprofit

21  veterans' organization but never received it.  In March 2021, he contacted the office of Senator Gary

22  Peters of Michigan, which requested the file on Plaintiff Egland's behalf.  Plaintiff Egland received

23  his file a year later in March 2022.  A few months later in July 2022, Plaintiff Egland applied for a

24  correction of his DD-214 with the assistance of Legal Aid at Work to change the narrative reason for

25  separation, separation code, reenlistment code, and separation authority.  He has not yet received a

26  decision on his application.

27      101.    ***Veteran Bears Burden of Proof***.  Despite the Government's own acknowledgment that

28  DADT and its predecessor policies were discriminatory and Under Secretary Stanley's September

1    2011 memorandum stating that record correction and discharge upgrade requests "should normally

2    [be] grant[ed]," as the requesting party, veterans are obligated to prove that the military committed an

3    error or injustice warranting a record correction.  They carry the burden of demonstrating that they

4    deserve to have their sexual orientation removed from their DD-214 and/or their discharge upgraded.

5            102.    As a result, review boards encourage veterans to submit comprehensive applications,

6    including personal statements, statements from their military supervisors (who may have participated

7    in the discrimination), letters of support from colleagues and friends (to whom the applicant must

8    disclose the trauma of their discharge), private health records, evidence of good conduct both in the

9    military and in the civilian community, and any other evidence that supports their request.  Veterans

10   are warned that the review boards will not obtain records or otherwise investigate their claims, even

11   though these boards have much greater access to relevant documents and witnesses.

12           103.    ***Complex and Intimidating Application Processes.***  The online application processes

13   for record corrections and discharge upgrades are hopelessly complicated and intimidating.  The

14   websites include out-of-date resources, broken and circular links, inscrutable acronyms, and complex

15   legal and military jargon.  A veteran must determine which of many review boards to apply to and sort

16   through lengthy directions that are not specific to those seeking post-DADT record corrections or

17   discharge upgrades.  Supporting documentation must meet exacting formatting standards.

18           104.    To even access the application portal, a veteran is faced with a version of this warning

19   that they must accept before submitting an application:

20           The [U.S. Government] routinely intercepts and monitors communications on
             this [information system] for purposes including, but not limited to, penetration
21           testing, COMSEC monitoring, network operations and defense, personnel
             misconduct (PM), law enforcement (LE), and counterintelligence (CI)
22           investigations.

23           105.    Veterans who experienced trauma and an invasion of privacy resulting in their

24   discriminatory discharge must agree to monitoring and interception of their private information to fix

25   their records.

26           106.    ***Stigma, Re-traumatization, and Isolation***.  The record correction and discharge

27   upgrade process fails to recognize that veterans who have been subject to discrimination are being

28   asked to return to the very institution that discriminated against them and relive the humiliating and

---

24

1    traumatic experience of their discharge while asking the institution to correct its own wrongs.  Painful

2    memories, feelings of shame, and traumatic discharge experiences create a barrier to accessing

3    available remedies.

4        107.    The Navy's discriminatory discharge, for example, led Plaintiff Gonzales to be

5    ashamed of his sexual orientation in the years following his discharge and, consequently, discouraged

6    him from undergoing the record correction process.  For many years, Plaintiff Gonzales was unable to

7    share his sexual orientation with his family members or discuss the details of his discharge with

8    anyone.  In fact, it took Plaintiff Gonzales twelve years after the repeal of DADT to even request his

9    military records.

10       108.    The Army's discriminatory discharge led Plaintiff Egland to believe that he had done

11   something wrong and failed as a soldier.  He hid the reason for his discharge from most of his family

12   out of fear of disappointing them.  Despite the promising career that he had been building, he told his

13   family and friends that he had asked to leave the Army early because he did not want to serve any

14   longer.  He does not talk about his military service with others and refused to read his military file

15   after receiving it in March 2022 for fear of what it contained.  Instead of feeling pride about his time

16   in the Army, he feels shame and sadness.

17   **V.    CLASS ALLEGATIONS**

18       109.    Plaintiffs Farrell, Egland, Gonzales, Sohn, and Steffanides bring this action pursuant to

19   Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf

20   of the following Sexual Orientation Indicator Class:

21               Veterans from all branches of the U.S. Armed Forces who have a DD-214
                 stating a narrative reason for separation or a separation code that references
22               sexual orientation as a reason for their discharge.

23       110.    Plaintiffs Farrell, Gonzales, and Steffanides also bring this action pursuant to Rule

24   23(a) and (b)(2) on behalf of themselves and on behalf of the following Discharge Upgrade Subclass:

25               Sexual Orientation Indicator Class members who did not receive an Honorable
                 discharge.
26

27       111.    The members of the Sexual Orientation Indicator Class and the Discharge Upgrade

28   Subclass are so numerous that joinder of all members is impracticable.  While the exact number of

CLASS ACTION COMPLAINT                                    CASE NO. _____

Class members is unknown to Plaintiffs at this time, based on government documentation received pursuant to a FOIA request, there are at least 35,801 veterans who fall within the proposed Sexual Orientation Indicator Class and at least 29,177 veterans who fall within the Discharge Upgrade Subclass.

112.    This case presents numerous common questions of law and fact, including but not limited to:

a.      Whether the Defendants violated the Equal Protection Clause when they issued Sexual Orientation Indicator Class members discharge paperwork that identified their actual or perceived sexual orientation, while not identifying the actual or perceived sexual orientation of other veterans;

b.      Whether the Defendants' failure to remove indicators of sexual orientation from discharge paperwork and issue Honorable discharges results in denial of benefits to Discharge Upgrade Subclass members; and/or

c.      Whether the Defendants' failure to remove indicators of sexual orientation from discharge paperwork leads to the denial of liberty owed as a function of Sexual Orientation Indicator Class members' service in the Armed Forces without due process of law.

113.    The members of the Sexual Orientation Indicator Class and Discharge Upgrade Subclass are readily ascertainable and identifiable.  They can be identified by reference to veterans' DD-214s (or other discharge papers), which are in Defendants' possession.

114.    Plaintiffs will fairly and adequately protect the interests of the Sexual Orientation Indicator Class and Discharge Upgrade Subclass because Plaintiffs' claims are typical and representative of all members of the Class and Subclass.  Each Plaintiff was discharged because of their sexual orientation.  On information and belief, all of Plaintiffs' DD-214 forms contain an indication of their sexual orientation.  Plaintiffs Farrell, Gonzales, and Steffanides were also denied Honorable discharges.

115.    There are no unique defenses that may be asserted against Plaintiffs as distinguished from their fellow class members, and the relief sought is common to all class members.  Plaintiffs are

typical of the members of the Sexual Orientation Indicator Class and Discharge Upgrade Subclass, and do not have interests that conflict with or are antagonistic to the interests of the Classes.  Plaintiffs intend to prosecute this action rigorously in order to secure remedies for the Sexual Orientation Indicator Class and Discharge Upgrade Subclass.

116.    Plaintiffs have retained competent counsel experienced in the relevant subject matters. Counsel are experienced in relevant federal civil rights litigation and class actions.

117.    Defendants have acted or refused to act on grounds that apply generally to the Sexual Orientation Indicator Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

118.    Defendants have acted or refused to act on grounds that apply generally to the Discharge Upgrade Subclass, thereby making appropriate final declaratory and injunctive relief with respect to the Subclass as a whole under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## VI.    CLAIMS FOR RELIEF

119.    Because Defendants have failed to remedy the harms of their admittedly intentional discrimination against the members of the Sexual Orientation Indicator Class and Discharge Upgrade Subclass, the Government continues to violate the putative Class's equal protection and due process rights under the Fourteenth and Fifth Amendments.  The Sexual Orientation Indicator Class and Discharge Upgrade Subclass seek declaratory and injunctive relief.

120.    Declaratory judgment is proper, pursuant to 28 U.S.C. §§ 2201-02 and Rule 57 of the Federal Rules of Civil Procedure, because an actual and immediate controversy exists between Plaintiffs, the Sexual Orientation Indicator Class, and Discharge Upgrade Subclass, on the one hand, and Defendants, on the other hand.  The parties have genuine and opposing interests that are direct and substantial.  Defendants have violated the constitutional rights of the Plaintiffs and the putative class members.  Upon information and belief, Defendants deny these allegations.  Declaratory relief is therefore necessary and appropriate.

121.    Further, Plaintiffs and the putative Sexual Orientation Indicator Class and Discharge Upgrade Subclass have no plain, adequate, or complete remedy at law.  Defendants will continue to violate the constitutional rights of Plaintiffs and the putative Class and Subclass and will continue to

inflict irreparable injury.  This actual injury and threat of injury to Plaintiffs and the putative Class and Subclass from continuous and continuing violations requires permanent injunctive relief.

**FIRST CLAIM FOR RELIEF**

**(Violation of the Fourteenth and Fifth Amendments – Equal Protection)**

**Asserted by All Plaintiffs, the Sexual Orientation Indicator Class,**

**and the Discharge Upgrade Subclass**

122.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs.

123.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits the states and state actors from discriminating against individuals based on sexual orientation.  The Equal Protection Clause of the Fourteenth Amendment applies to the federal government through the Due Process Clause of the Fifth Amendment.

124.    For the Sexual Orientation Indicator Class, the Government included information relating to sexual orientation, sexual conduct, and/or marriage in the veterans' DD-214s that it did not include in the discharge paperwork of other veterans.  By treating the Sexual Orientation Indicator Class differently on the basis of sexual orientation, Defendants are engaging in impermissible discrimination based on sexual orientation in violation of the Equal Protection Clause.

125.    As a direct and proximate result of the discrimination described above, Plaintiffs and the Sexual Orientation Indicator Class suffered, among other things, loss of privacy and stigmatization.  Without injunctive relief from Defendants' inaction, Plaintiffs and the Sexual Orientation Indicator Class will continue to suffer irreparable harm in the future.

126.    DADT and its predecessor policies intentionally discriminated against LGBTQ+ service members by discharging them based on their actual or perceived sexual orientation.  The known and unaddressed consequences of those policies also constitute intentional and continuing discrimination.

127.    Plaintiffs and the Sexual Orientation Indicator Class continue to experience the lasting and intentionally discriminatory consequences of DADT and its predecessor policies through the indicators of sexual orientation on their DD-214.

128.    That Defendants have left indicators of sexual orientation on the discharge paperwork

CLASS ACTION COMPLAINT                                                        CASE NO. _____

of thousands of LGBTQ+ veterans, when Defendants can correct this injustice, is a violation of the Fifth Amendment's guarantee of equal protection.

**SECOND CLAIM FOR RELIEF**

**(Violation of the Fifth Amendment – Substantive Due Process, Privacy Interest)**

**Asserted by All Plaintiffs, the Sexual Orientation Indicator Class,**

**and the Discharge Upgrade Subclass**

129.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs.

130.    The substantive component of the Fifth Amendment's Due Process Clause includes not only the privileges and rights expressly enumerated by the Bill of Rights, but also includes the fundamental rights implicit in the concept of ordered liberty.  The Fifth Amendment bars certain government actions regardless of the fairness of the procedures used to implement them, particularly conduct that is so arbitrary as to constitute an abuse of governmental authority.

131.    By requiring veterans discharged under DADT and predecessor policies to maintain private information regarding sexual orientation, consensual sexual acts, and/or same-sex marriages on their DD-214s, Defendants are continuously and deliberately depriving Plaintiffs and the Sexual Orientation Indicator Class of their constitutional right to confidentiality, also known as an informational privacy interest, in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

132.    There is no legitimate governmental interest in the ongoing disclosure of this personal information, particularly after the Government halted the policies that triggered the disclosures after its own recognition that the policies were discriminatory and violated the rights of active service members.

133.    As a direct and proximate result of the substantive due process violation described above, Plaintiffs and the Sexual Orientation Indicator Class have suffered an invasion of privacy. Without injunctive relief from Defendants' inaction, Plaintiffs and the Sexual Orientation Indicator Class will continue to suffer irreparable harm in the future.

134.    That Defendants have left indicators of sexual orientation on the discharge paperwork of thousands of LGBTQ+ veterans, when Defendants can correct this injustice, is a violation of the

Fifth Amendment's protections of an informational privacy interest.

**THIRD CLAIM FOR RELIEF**

**(Violation of the Fifth Amendment – Substantive Due Process,**

**Liberty Interest in Veterans' Benefits)**

**Asserted by Plaintiffs Farrell, Gonzales, and Steffanides**

**and the Discharge Upgrade Subclass**

135.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs.

136.    The substantive component of the Fifth Amendment's Due Process Clause includes not only the privileges and rights expressly enumerated by the Bill of Rights, but also includes the fundamental rights implicit in the concept of ordered liberty.  The Fifth Amendment bars certain government actions regardless of the fairness of the procedures used to implement them, particularly conduct that is so arbitrary as to constitute an abuse of governmental authority.

137.    By requiring veterans discharged under DADT and predecessor policies to maintain discriminatorily reduced discharge statuses, Defendants are continuously and deliberately depriving Plaintiffs Farrell, Gonzales, and Steffanides and the Discharge Upgrade Subclass of veterans' benefits, a legitimate property interest protected by the Fifth Amendment, in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

138.    Plaintiffs Farrell, Gonzales, and Steffanides and the Discharge Upgrade Subclass were issued discharge statuses below Honorable because of their perceived or actual LGBTQ+ status, depriving them of veterans' benefits that are conditioned on an Honorable discharge.  There is no legitimate governmental interest in the ongoing deprivation of veterans' benefits, particularly after the Government halted the policies that triggered the reduced discharge statuses after its own recognition that the policies were discriminatory and violated the rights of service members.

139.    That Defendants have left thousands of LGBTQ+ veterans with discriminatorily reduced discharge statuses, when Defendants can correct this injustice, is an ongoing violation of the Fifth Amendment's guarantee of substantive due process.

/ / /

/ / /

**FOURTH CLAIM FOR RELIEF**

**(Violation of the Fifth Amendment – Procedural Due Process)**

**Asserted by All Plaintiffs, the Sexual Orientation Indicator Class,**

**and the Discharge Upgrade Subclass**

140.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs.

141.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution requires the Government to provide notice and an opportunity to be heard before deprivation of a liberty or property interest.

142.    By requiring veterans discharged under DADT and predecessor policies to identify their actual or perceived sexual orientation on their DD-214s, Defendants are continuously and deliberately depriving Plaintiffs and the Sexual Orientation Indicator Class of their liberty interest in confidentiality and informational privacy.

143.    By requiring veterans discharged under DADT and predecessor policies to maintain discriminatorily reduced discharge statuses, Defendants are continuously and deliberately depriving Plaintiffs Farrell, Gonzales, and Steffanides and the Discharge Upgrade Subclass of their property interest in veterans' benefits.

144.    The sole avenue for relief from the lasting consequences of DADT and its predecessor policies is for individual veterans to apply for record corrections and discharge upgrades from their respective Discharge Review Boards.

145.    The individualized record correction and discharge upgrade process is constitutionally inadequate.  The process places the burden on individual veterans to spend months or years obtaining old personnel records before they can even file the applications that will then take months or years to be processed, on top of the years since their discriminatory discharges.  The application process is opaque; many veterans must hire lawyers to assist them.  Individual veterans are forced to relive the trauma of their discharge, carrying the burden of proving discrimination to the very institution that discriminated against them.  Through the entire process, Plaintiffs, the Sexual Orientation Indicator Class, and the Discharge Upgrade Subclass are continuously deprived of their Fifth Amendment protected privacy and liberty interests.

146.    The individualized record correction and discharge upgrade process demands that victims of discrimination jump through bureaucratic hoops that would not be necessary had they not been victims of government-sanctioned discrimination.

147.    Defendants' failure to implement a constitutionally compliant process to address the consequences of DADT and its predecessor policies continues to deprive Plaintiffs, the Sexual Orientation Indicator Class, and the Discharge Upgrade Subclass of their Fifth Amendment protected interests and violates the Fifth Amendment's guarantee of procedural due process.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

a.    A judicial declaration, pursuant to 28 U.S.C. §§ 2201-02 and Rule 57 of the Federal Rules of Civil Procedure that:

    i.    Defendants' failure to systematically remove indicators of sexual orientation from veterans' discharge papers upon the repeal of DADT violates the Fourteenth and Fifth Amendment's guarantees of equal protection and substantive due process;

    ii.    Defendants' record correction and discharge upgrade process violates the Fifth Amendment's guarantee of procedural due process; and

    iii.    Defendants' failure to systematically upgrade the discharge characterizations of veterans receiving a less than Honorable characterization as a result of a discharge based on their actual or perceived sexual orientation violates the Fourteenth and Fifth Amendment's guarantees of equal protection, substantive due process, and procedural due process.

b.    A permanent injunction against Defendants:

    i.    Requiring Defendants to conduct a comprehensive review of every discharge processed pursuant to DADT and its predecessor policies and systematically remove all indicators of sexual orientation—including (1) narrative reasons for separation, and (2) affiliated separation codes from veterans' DD-214s—and to provide, or make easily available, to each veteran a corrected copy of his, her, or their DD-214;

    ii.    Requiring Defendants to systematically upgrade discharge characterizations to Honorable in accordance with the above changes to DD-214s and notify all relevant federal

1    agencies of the upgrade;

2            iii.    Requiring Defendants to systematically change reenlistment/reentry codes in

3    accordance with the above changes to DD-214s; and

4            iv.    Retaining jurisdiction over Defendants until such time as the Court is satisfied

5    that the unlawful customs, policies, practices, rules, regulations, acts, and omissions

6    complained of herein no longer exist and will not recur.

7        c.    An award of reasonable attorneys' fees and costs incurred as a result of bringing this

8    action, pursuant to 28 U.S.C. § 2412(d) and other applicable laws; and

9        d.    Any other and further form of relief as the Court deems just and proper.

10

11   Dated: August 8, 2023                    By:*/s/ Jocelyn Larkin*
                                              Jocelyn Larkin
12                                            Attorney for Plaintiffs

13                                            Elizabeth Kristen (SBN 218227)
14                                            Lynnette Miner (SBN 304276)
                                              LEGAL AID AT WORK
15                                            180 Montgomery Street, Suite 600
                                              San Francisco, CA 94104
16                                            Telephone: (415) 864-8848
                                              ekristen@legalaidatwork.org
17                                            lminer@legalaidatwork.org

18
                                              Jocelyn Larkin (SBN 110817)
19                                            Lindsay Nako (SBN 239090)
                                              Fawn Rajbhandari-Korr (SBN 315888)
20                                            Meredith Dixon (SBN 346864)
21                                            IMPACT FUND
                                              2080 Addison Street, Suite 5
22                                            Berkeley, CA 94704
                                              Telephone: (510) 845-3473
23                                            jlarkin@impactfund.org
24                                            lnako@impactfund.org
                                              fkorr@impactfund.org
25                                            mdixon@impactfund.org

26                                            David K. Willingham (SBN 198874)
                                              Rachel Yeung (SBN 317361)
27                                            KING & SPALDING LLP
28                                            633 West Fifth Street, Suite 1600

                                        33

1    Los Angeles, CA 90071
     Telephone: (213) 443-4433
2    dwillingham@kslaw.com
     ryeung@kslaw.com
3

4    Chelsea Corey (*pro hac vice* forthcoming)
     KING & SPALDING LLP
5    300 S. Tryon Street, Suite 1700
     Charlotte, NC 28202
6    ccorey@kslaw.com

7    Radha Manthe (*pro hac vice* forthcoming)
8    KING & SPALDING LLP
     1180 Peachtree Street, NE, Suite 1600
9    Atlanta, GA 30309
     rmanthe@kslaw.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                    CASE NO. _____