Jocelyn Larkin (SBN 110817)
jlarkin@impactfund.org
**IMPACT FUND**
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone:     (510) 845-3473
Facsimile:     (510) 845-3654

Elizabeth Kristen (SBN 218227)
ekristen@legalaidatwork.org
**LEGAL AID AT WORK**
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone:     (415) 864-8848
Facsimile:     (415) 593-0096

David Willingham (SBN 198874)
dwillingham@kslaw.com
**KING & SPALDING, LLP**
633 West Fifth Street, Suite 16006
Los Angeles, CA 90071
Telephone:     (213) 443-4433
Facsimile:     (213) 443-4310

Chelsea Corey (*pro hac vice*)
chelsea.corey@haynesboone.com
**HAYNES AND BOONE, LLP**
50 S. Tryon Street, Suite 700
Charlotte, NC 28202
Telephone:     (980) 771-8251
Facsimile:     (980) 771-8201

*Attorneys for Plaintiffs (additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRILL FARRELL, JAMES GONZALES, HAYDEN POWELL, JULIANNE "JULES" SOHN, STEPHAN "LILLY" STEFFANIDES, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE; LLOYD J. AUSTIN III, Secretary, United States Department of Defense, in his official capacity; CHRISTINE WORMUTH, Secretary, United States Army, in her official capacity; CARLOS DEL TORO, Secretary, United States Navy, in his official capacity; FRANK KENDALL, Secretary, United States Air Force, in his official capacity,<br><br>    Defendants. | Case No.: 3:23-CV-04013-JCS<br><br>CIVIL RIGHTS ACTION<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONDITITONAL CLASS CERTIFICATION, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND REASONABLE ATTORNEYS' FEES AND COSTS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:        Hon. Joseph Spero<br>Date:         February 12, 2025<br>Time:         9:30 a.m.<br>Location:     Courtroom D, 15th Floor |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that Plaintiffs hereby move pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure for an Order:

(1) finding that, for purposes of effectuating the proposed settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23 are likely satisfied, and granting conditional class certification; and

(2) preliminarily approving the proposed class action Settlement Agreement dated January 3, 2025, including the form and manner of notice to the Settlement Class, Plaintiffs' reasonable attorneys' fees and costs under the Equal Access to Justice Act, and setting a date for a Final Approval Hearing.

Defendants have represented that they intend to file a statement of non-opposition that includes a request for the Court to deem this matter submitted for immediate determination without a hearing.[1] Plaintiffs join in Defendants' anticipated request. Should the Court desire a hearing on this motion, Plaintiffs will move pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure for the aforementioned relief on February 12, 2025, at 9:30 a.m. or as soon thereafter as this matter may be heard by the Honorable Joseph C. Spero of the United States District Court for the Northern District of California.

Plaintiffs' motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Lori Rifkin and the proposed Settlement Agreement attached as Exhibit 1 thereto, the Declaration of Elizabeth Kristen, the Declaration of Radha Sathe Manthe, the Declaration of Chelsea Corey, the Declarations of Named Plaintiffs Sherrill Farrell, James Gonzales, Jules Sohn, and Lilly Steffanides, the pleadings and records on file in this action, and argument presented at any hearing of this motion.

Dated: January 6, 2025                    Respectfully Submitted,

                                          LEGAL AID AT WORK
                                          IMPACT FUND

---

[1] Defendants continue to deny the allegations in the Complaint and Amended Complaint but for settlement purposes do not oppose this motion.

KING & SPALDING LLP
HAYNES AND BOONE, LLP

By: _____
Fawn Rajbhandari-Korr
Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iv

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND........................................ 3

    A.   Ongoing Harm Caused by Discriminatory DD-214s.................... 3

    B.   Course of the Litigation .............................................................. 4

    C.   Settlement Negotiations .............................................................. 4

III. SUMMARY OF PROPOSED CLASS SETTLEMENT ................................ 6

    A.   The Settlement Class.................................................................... 6

    B.   Relief Provided by the Settlement .............................................. 6

    C.   Notice Plan................................................................................... 7

    D.   Attorneys' Fees and Costs .......................................................... 7

IV.  ARGUMENT ....................................................................................................... 8

    A.   The Court Should Conditionally Certify the Proposed Class for Settlement Purposes. .......................................................... 8

        1.   Plaintiffs Satisfy the Requirements for Class Certification under Rule 23(a). ...................................... 8

        2.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).... 13

    B.   The Proposed Settlement is Fair, Reasonable, and Adequate..................................... 13

        1.   The Proposed Settlement is a Product of Arm's Length Negotiations Among Experienced Counsel. .......................................................... 14

        2.   The Strength of Plaintiffs' Claims and Risk of Continued Litigation Weigh in Favor of Approval. .......................................................... 15

        3.   The Relief Obtained in Settlement is Fair, Adequate, and Reasonable. ......... 15

    C.   The Notice Plan is Appropriate and Satisfies the Requirements of Rule 23. ............. 19

    D.   The Attorneys' Fees and Costs Provided for in the Settlement are Reasonable......... 20

    E.   The Court Should Enter the Proposed Order and Set a Final Approval Hearing Date. .......................................................... 23

V.   CONCLUSION.................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A. B. v. Hawaiʻi State Dep't of Educ.*,
   30 F.4th 828 (9th Cir. 2022)..................................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................... 8

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001)................................................................................ 11

*Barrios v. California Interscholastic Federation*,
   277 F.3d 1128 (9th Cir. 2002).............................................................................. 21

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021).............................................................................. 22

*Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health & Hum. Resources*,
   532 U.S. 598 (2001)............................................................................................. 21

*Carlotti v. ASUS Computer Int'l*,
   No. 18-cv-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ........................ 8

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004).............................................................. 2, 14, 15, 19

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980).............................................................................. 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 2008)........................................................................ 11, 14

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)................................................................................ 11

*Hernandez v. Cnty. of Monterey*,
   305 F.R.D. 132 (N.D. Cal. 2015).......................................................................... 13

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010)................................................................................ 18

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018).......................................................................... 12

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2021)................................................................... 13, 14, 22

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019).................................. 8

*In re Netflix Priv. Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013).................... 14

*In re TD Ameritrade Account Holder Litig.*,
    No. C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ........................................... 17

*Int'l Woodworkers of Am. AFL-CIO, Local 3-98 v. Donovan*,
    769 F.2d 1388 (9th Cir. 1985), *amended*, 792 F.2d 762 (9th Cir. 1985) ...................................... 21

*Kennedy v. Whitley*,
    539 F. Supp. 3d 261 (D. Conn. 2021) ................................................................................. 18, 19

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ........................................................................................................ 14

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998) ...................................................................................................... 17

*McKnight v. Uber Techs., Inc.*,
    No. 14-cv-05615-JST, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) ........................................... 13

*Mendoza v. Tuscon Sch. Dist. No. 1*,
    623 F.2d 1388 (9th Cir. 1980) ...................................................................................................... 19

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    No. 4:20-cv-09077-JSW, 2024 WL 4868182 (N.D. Cal. Oct. 3, 2024) ......................................... 19

*Ms. L. v. U.S. Immigration and Customs Enforcement*,
    No. 18-cv-00428 (S.D. Cal. Sept. 24, 2024), ECF No. 752 .................................................... 19, 22

*Nat'l Fed'n of the Blind v. Target Corp.*,
    582 F. Supp. 2d 1185 (N.D. Cal. 2007) .......................................................................................... 9

*Officers for Justice v. Civ. Serv. Comm'n & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................................................ 17

*Perez–Arellano v. Smith*,
    279 F.3d 791 (9th Cir.2002) .......................................................................................................... 21

*Pirus v. Bowen*,
    869 F.2d 536 (9th Cir. 1989) ........................................................................................................ 22

*Richard S. v. Dep't of Developmental Servs.*,
    317 F.3d 1080 (9th Cir.2003) ........................................................................................................ 21

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ................................................................................................. 10, 13

*Staton v. Boeing Corp.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................................................ 12

*Stewart v. Applied Materials, Inc.*,
    No. 15-cv-02632, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ................................................. 22

*Thomas v. Peterson*,
    841 F.2d 332 (9th Cir.1988) .......................................................................................................... 21

*Vargas v. Ford Motor Co.*,
   No. cv 1208388, 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020)...................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................................. 10

*Williams v. Boeing Co.*,
   517 F.3d 1120 (9th Cir. 2008)................................................................................................. 18

*Wortman v. Air New Zealand*,
   326 F.R.D. 549 (N.D. Cal. 2018) ............................................................................................... 9

**Statutes**

28 U.S.C. §§ 2412........................................................................................................................ 2, 21

10 U.S.C. § 654 (2006) (repealed 2010) ........................................................................................... 1

**Federal Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................... 2, 9, 10, 11

Fed. R. Civ. P. 23(b) ............................................................................................................... 13, 18

Fed. R. Civ. P. 23(c) ...................................................................................................................... 19

Fed. R. Civ. P. 23(e) ...................................................................................................................... 13

Fed. R. Civ. P. 23(g) ...................................................................................................................... 12

**Regulations**

32 C.F.R. § 70.4(b)(2)..................................................................................................................... 10

**Other Authorities**

Department of Defense Directive 1332.41 ...................................................................................... 10

United States District Court for the Northern District of California, *Procedural Guidance for Class Action Settlements* (2018)................................................................................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The United States discharged tens of thousands of servicemembers pursuant to Don't Ask, Don't Tell ("DADT"), 10 U.S.C. § 654 (2006) (repealed 2010), and similar prior policies that barred people from serving in the military on the basis of sexual orientation. But even after the repeal of DADT took effect in 2011, veterans discharged under DADT and its predecessor policies still experience ongoing harm as a result of the discharge paperwork issued to them by Defendants. ECF No. 43 ¶¶ 50-53. The discharge paperwork—also known as Form DD-214—is a veteran's primary record of military service, and veterans must show it to prove their military service and access veterans' benefits for the rest of their lives. Yet, the DD-214s of more than 30,000 veterans may still contain references to their actual or perceived sexual orientation as a basis for discharge. Only the DD-214s of veterans discharged under DADT and its predecessor policies include references to sexual orientation. *Id.* ¶¶ 43-49. The DD-214s of most veterans discharged under these policies also bar them from reenlisting in military service and burden them with discharge characterizations below Honorable, disqualifying them from valuable veterans' benefits. *Id.* ¶¶ 7, 9.

Plaintiffs brought this action to obtain systematic affirmative relief for a putative nationwide class of veterans who experience ongoing harm as a result of Defendants' policies with respect to their discharge paperwork. Defendants instruct veterans that the DD-214 is the most important service record they will receive. ECF No. 43 ¶ 35. Plaintiffs alleged that, despite Defendants' own recognition of the importance of the DD-214, Defendants failed to take systematic action to address the ongoing injuries caused by the DD-214s issued pursuant to DADT and its predecessor policies. *Id.* ¶ 10. Instead, Defendants' policies require each veteran to individually petition the Discharge Review Board or Board for Correction of Military Records (the "Board") to correct the veteran's military record—a process that places the onus on the veteran, routinely takes multiple years, and often requires the assistance of counsel to complete. *Id.* ¶ 94-95, 100. Plaintiffs alleged that the current process is so burdensome, lengthy, and opaque that it effectively denies meaningful relief to affected veterans. *Id.* ¶¶ 56-61, 100-111. Plaintiffs also alleged that requiring veterans to avail themselves of this Board process to remove admittedly discriminatory sexual orientation indicators

1    is, in itself, discriminatory.  ECF No. 67 at 24.

2          The parties have negotiated a proposed settlement that would enable veterans discharged

3    under DADT and similar prior policies to request changes to their DD-214s through streamlined

4    review procedures.  These procedures will provide a faster, easier, and more effective avenue for

5    veterans to request removal of all indicators of sexual orientation from their DD-214s.  For most

6    veterans given discharge characterizations below Honorable, the settlement will also provide an

7    expedited discharge upgrade review.  Participating veterans will not have to individually obtain their

8    military records, gather evidence, or submit individual petitions to the Board.  The streamlined

9    review procedures will be available for at least three years.

10          Accordingly, Plaintiffs move for conditional class certification for settlement purposes and

11    preliminary approval of the class action settlement, including reasonable attorneys' fees and costs.

12    This motion is unopposed.  Declaration of Lori Rifkin in Support of Motion ("Rifkin Decl."), filed

13    herewith, ¶ 35.

14          First, Plaintiffs seek certification for purposes of settlement of a class of veterans discharged

15    under DADT and predecessor policies whose DD-214s contain indicators of their sexual orientation.

16    Because the proposed class is sufficiently numerous, clearly defined, and ascertainable; shares

17    common issues of fact and law that predominate over individual issues; is represented by

18    experienced counsel; and meets all other requirements of Rule 23(a) and (b)(2), the Court should

19    grant conditional certification.

20          Second, Plaintiffs request preliminary approval of the proposed Settlement Agreement,

21    attached as Exhibit 1 ("SA") to the Rifkin Declaration filed herewith.  The settlement delivers

22    substantial and prompt relief to the class without the risks of continuing and protracted litigation.  It

23    includes appropriate notice to potential class members and provides for payment of $350,000 in

24    reasonable attorneys' fees and costs to Plaintiffs by Defendants under the Equal Access to Justice

25    Act, 28 U.S.C. §§ 2412 ("EAJA").  Because the settlement satisfies all Rule 23(e) requirements and

26    the factors set forth in *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004),

27    the Court should grant preliminary approval of the proposed settlement.

28

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiffs brought this putative class action on behalf of themselves and tens of thousands of veterans discharged under DADT and similar prior policies that prohibited individuals from serving in the armed forces based on actual or perceived sexual orientation.  ECF No. 43 ¶¶ 6, 34.  Plaintiffs seek declaratory and injunctive relief to remedy these ongoing constitutional violations.  *Id.* ¶¶ 122-23.

### A.    Ongoing Harm Caused by Discriminatory DD-214s

The lasting impact of the discharges under DADT and its predecessor policies memorialized in veterans' discharge papers touches virtually every aspect of veterans' lives.  For example, veterans are frequently required to show their DD-214s to prospective employers to establish their military service, which forces them to disclose their sexual orientation to their employer, lose out on hiring preferences given to other veterans, or abandon the employment opportunity.  ECF No. 43 ¶¶ 75, 90.  State and federal governments have also created a vast network of benefits for veterans in recognition of their service, including healthcare, educational, and financial benefits—all of which require a DD-214 to prove military service.  *Id.* ¶¶ 78-88.  DD-214s indicating that a veteran was discharged pursuant to DADT or its predecessor policies also stigmatize veterans, isolate them from the veteran community, and deprive them of society's respect for and recognition of their service.  *Id.* ¶¶ 44-49.

The existing system for veterans to seek record corrections is plagued by significant hurdles that burden veterans seeking corrections related to DADT and predecessor policies.  ECF No. 43 ¶¶ 100-111.  As Plaintiffs alleged in the operative complaint, the Board review process requires veterans to prove that they were subjected to discrimination that the Government has already acknowledged, and that such discrimination justifies a correction to their record in the interest of justice.  *Id.* ¶ 105.  The process is complex, opaque, and further complicated by delays in obtaining service records necessary to begin the discharge upgrade process.  *Id.* ¶¶ 100-103.  For example, former Plaintiff Steven Egland waited three years for the Department of Defense to send his military file, and only then could he petition for a correction.  ECF No. 1 ¶ 100.  The burdens and ineffectiveness of this process result in ongoing harm to affected veterans, whose heterosexual

counterparts do not have to go through any similar process to remove any indications of sexual orientation from their discharge paperwork—because for them, none existed in the first instance. ECF No. 43 ¶¶ 105-109.

**B.    Course of the Litigation**

On December 8, 2021, Plaintiffs' counsel wrote to the United States Secretary of Defense and Secretary of Homeland Security about the problems with the Board record correction process for LGBTQ+ veterans and the constitutional violations presented in this case, and asked for a meeting to discuss remedies. ECF 45-14 ¶ 11.  In January 2022, the Department of Defense responded, "we are unable to support your request at this time."  *Id.*  On August 8, 2023, Plaintiffs Sherrill Farrell, James Gonzales, Jules Sohn, Steven Egland, and Lilly Steffanides filed this action for classwide injunctive and declaratory relief asserting four claims under the Fifth and Fourteenth Amendments. ECF No. 1.  On August 10, 2023, the Department of Defense notified Steven Egland that it had granted his petition to remove references to sexual orientation from his DD-214.  Rifkin Decl. ¶ 11. Subsequently, Plaintiffs filed a First Amended Complaint removing Mr. Egland and adding Hayden Powell as a named Plaintiff.  ECF No. 43.

On October 31, 2023, Plaintiffs moved for class certification.  ECF No. 45.  On November 17, 2023, Defendants moved to dismiss the operative complaint, challenging timeliness, standing and exhaustion of remedies, and the sufficiency of Plaintiffs' allegations.  ECF No. 50.  The Court denied Plaintiffs' motion for class certification without prejudice to refiling after a ruling on Defendants' motion to dismiss.  ECF No. 51.  The parties fully briefed Defendants' motion to dismiss and the Court heard argument on February 2, 2024.  ECF No. 62.  On June 20, 2024, the Court denied Defendants' motion to dismiss in full.  ECF No. 67.

**C.    Settlement Negotiations**

Following the Court's denial of their motion to dismiss, Defendants agreed to meet and confer about the possibility of settlement.  Rifkin Decl. ¶ 16.  In July 2024, the parties began to engage in arm's length settlement negotiations that continued for nearly six months.  Rifkin Decl. ¶ 17; Declaration of Elizabeth Kristen in Support of Motion ("Kristen Decl."), filed herewith, ¶ 10; Declaration of Radha Satha Manthe in Support of Motion ("Manthe Decl."), filed herewith, ¶ 12;

Declaration of Chelsea Corey in Support of Motion ("Corey Decl."), filed herewith, ¶ 9. On July 22, 2024, the parties asked the Court to continue the case management conference so that they could focus their efforts on settlement negotiations. ECF No. 71. Between July 16, 2024, and December 10, 2024, counsel for the parties met and conferred weekly or bi-weekly via videoconference. Rifkin Decl. ¶ 19; Kristen Decl. ¶ 10; Manthe Decl. ¶ 12; Corey Decl. ¶ 9. Negotiations during these meetings were productive but adversarial in nature. *Id.* Counsel made incremental progress each week through hard-fought compromises. *Id.* On September 10, 2023, counsel participated in an all-day in-person settlement negotiation meeting in Washington, D.C., which was also attended by subject-matter experts brought by the United States Department of Defense. Rifkin Decl. ¶ 20; Kristen Decl. ¶ 11; Manthe Decl. ¶ 13; Corey Decl. ¶ 10. In October 2024, the parties reached agreement on key settlement terms and asked the Court to vacate the case management conference and related deadlines to allow them to focus on finalizing the settlement. ECF No. 76; Rifkin Decl. ¶ 22; Kristen Decl. ¶ 13; Manthe Decl. ¶ 15; Corey Decl. ¶ 12. The parties then negotiated the final terms of the settlement agreement and executed it on January 3, 2025. Rifkin Decl. ¶ 22 & Exh. 1.

Plaintiffs' counsel—who have decades of experience litigating civil rights actions and class actions—assessed the settlement based on their thorough investigation of this case, consultations with named Plaintiffs and other advocates for LGBTQ+ veterans, their prior litigation experience, and additional information obtained through the course of settlement discussions. Rifkin Decl. ¶ 32; Kristen Decl. ¶ 15; Manthe Decl. ¶ 17; Corey Decl. ¶ 14. Plaintiffs' counsel weighed the strengths and weaknesses of the legal issues, the relief they were able to obtain through settlement versus the relief possible through litigation, and the benefits and risks of proceeding with further litigation. Rifkin Decl. ¶ 33; Kristen Decl. ¶ 15; Manthe Decl. ¶ 17; Corey Decl. ¶ 14. The settlement would provide meaningful and timely relief to tens of thousands of veterans experiencing ongoing harm related to their discharge paperwork and status. Named Plaintiffs and their counsel concluded that the substantial relief obtained for the putative class through this settlement as compared to the potential delay and substantial risks of ongoing litigation make this settlement an excellent outcome. Farrell Decl. ¶ 31; Gonzales Decl. ¶¶ 45-47; Sohn Decl. ¶ 35; Steffanides Decl. ¶¶ 45-47.

III. **SUMMARY OF PROPOSED CLASS SETTLEMENT**

A. **The Settlement Class**

The settlement contemplates certification of a Settlement Class under Rule 23(b)(2), defined as:

> [V]eterans of the U.S. Army, U.S. Navy, U.S. Air Force, and U.S. Marine Corps who were administratively separated prior to September 20, 2011, and whose most recent Service separation document shows their basis for discharge was sexual orientation, homosexual conduct, homosexual admission, homosexual marriage, similar language, or a policy title or number signifying separation for sexual orientation.

SA ¶ 4(d).

B. **Relief Provided by the Settlement**

The settlement establishes two corrections procedures for Settlement Class members. The first is a streamlined administrative change process to remove sexual orientation indicators from the DD-214s of Settlement Class members with Honorable and Uncharacterized/Entry Level discharges ("Administrative Change Process"). The following changes to the Settlement Class members' DD-214s will be available through the Administrative Change Process: (1) the narrative basis (i.e., reason) for separation changed to "Secretarial Authority," (2) the Separation Program Designator Code[2] changed to correspond to the new narrative basis, and (3) the Re-Entry code be upgraded to RE-1 if it was RE-2 or lower.[3] The Administrative Change Process will not require Board review and will be available for at least three years. SA ¶ 6-7.

The second procedure the settlement establishes is an expedited group discharge upgrade review process for Settlement Class members discharged with characterizations of General Under Honorable Conditions or Under Other Than Honorable Conditions ("Discharge Upgrade Review Process"). Defendants will submit group discharge upgrade requests for Board review on behalf of eligible Settlement Class members who opt into this process. The first series of group applications will be submitted within nine months after the Final Approval order is entered. Group applications

---

[2] Separation Program Designator Code is a three-character alphabetic combination identifying the reasons for and type of separation.

[3] RE-1 signifies that the veteran is eligible for reenlistment. *See* Office of the Naval Inspector General, *What is a Reenlistment Code?*, SECRETARY OF THE NAVY, https://www.secnav.navy.mil/ig/Lists/FAQs/DispForm.aspx?ID=641 (last visited January 3, 2025).

will continue at approximately three-month intervals and remain available for at least three years.  SA ¶ 7.

**C.     Notice Plan**

The notice plan is appropriate to advise Settlement Class members of the proposed settlement, the relief it would provide, and how to exercise their rights to object and/or participate. If the Court grants preliminary approval of the settlement, the proposed Class Notice ("Notice"), included as **Attachment B** to the Settlement Agreement, will be posted on a public-facing Department of Defense website and Plaintiffs' counsel's case website, and distributed to LGBTQ+ organizations, veterans' organizations, legal clinics, and related listservs across the country.  SA ¶ 24(a)-(c).

Following final approval, Defendants will prepare a class list utilizing their records database and send letters to certain class members describing how to access the settlement's expedited DD-214 corrections procedures.  Because these letters will be sent to last-known addresses, in order to protect class members' privacy and not compound the harms described in this case, the letters will not directly reference sexual orientation or DADT policies.  Rifkin Decl. ¶ 39.  Instead, the letters will direct veterans to a phone number, email address, and website where they can obtain more information about the settlement relief, including how to request corrected DD-214s.  SA ¶ 8. Information about how veterans can request DD-214 corrections pursuant to the settlement will be posted on the Department of Defense and each military department's websites, as well as Plaintiffs' counsel's case website.

**D.     Attorneys' Fees and Costs**

The Settlement Agreement provides that Defendants will pay $350,000 to Plaintiffs in reasonable attorneys' fees and costs.  SA ¶ 34.  As detailed below, this amount is an approximately 70% reduction of Plaintiffs' counsel's total lodestar when calculated at the 2023 EAJA statutory maximum rate of $244.62 per hour.  Rifkin Decl. ¶ 52.  The settlement is not conditioned upon the Court's approval of any attorneys' fees or costs.

//

//

1  IV.  **ARGUMENT**

2      A.    **The Court Should Conditionally Certify the Proposed Class for Settlement**
              **Purposes.**
3

4          The proposed Settlement Class definition is coextensive with the class proposed in Plaintiffs'

5   operative complaint.  United States District Court for the Northern District of California, *Procedural*

6   *Guidance for Class Action Settlements* ¶ 1(a) (2018) ("N.D. Cal. Class Settlement Guidance").  The

7   Settlement Class definition contains greater detail than the class definition in the operative complaint

8   to clarify the scope of the proposed class and facilitate Defendants' provision of relief.  *Compare* SA

9   ¶ 4(d) *with* ECF No. 43 at ¶ 112.  The parties jointly drafted this definition and it incorporates

10  information Plaintiffs did not have at the time they filed the operative complaint.  Rifkin Decl. ¶ 23.

11  The settlement does not propose a subclass because the injunctive relief negotiated for the entire

12  proposed Settlement Class addresses the discharge upgrade claims of the subclass defined in

13  Plaintiffs' operative complaint.  *Id.*

14         There is no substantive difference between the proposed Settlement Class definition and

15  Plaintiffs' original proposed class definition that would impede certification for settlement purposes.

16  Indeed, courts routinely approve more extensive departures from proposed class definitions.  *See*,

17  *e.g.*, *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2019 WL 6134910, at *14 (N.D. Cal.

18  Nov. 19, 2019) (approving settlement class narrower than class in complaint); *In re Chrysler-Dodge-*

19  *Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661, at

20  *3-7 (N.D. Cal. Feb. 11, 2019) (approving settlement with "simpler" class definition).

21                 1.  Plaintiffs Satisfy the Requirements for Class Certification under Rule 23(a).

22         The proposed Settlement Class meets Rule 23 requirements for class certification.  *See*

23  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that certification requires that

24  all four elements of Rule 23(a) and at least one prong under Rule 23(b) be satisfied).  In the

25  settlement context, if a class has not yet been certified, courts should give the Rule 23 certification

26  factors "undiluted, even heightened, attention."  *Id.* at 620; *see also* Fed. R. Civ. P. 23, advisory

27  committee's note to 2018 amendment ("[T]he parties must ensure that the court has a basis for

28  concluding that it likely will be able, after the final hearing, to certify the class.").  Here, the Court

may readily conclude that it will likely be able to certify the Settlement Class at final approval.

*a)      The Settlement Class is Sufficiently Numerous.*

The proposed Settlement Class meets the numerosity requirement of Rule 23(a) because "joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Department of Defense website states that 32,837 veterans were discharged under DADT and predecessor policies,[4] and Defendants' response to Plaintiffs' Freedom of Information Act request indicated there are at least 35,801 veterans who are in this group.  ECF No. 43 ¶ 114.  These tens of thousands of veterans are presumptively members of the proposed Settlement Class because Defendants themselves have characterized these veterans' discharges as based on their sexual orientation.[5]  While some of those veterans may have received relief through the existing Board review process and a limited initiative Defendants announced in September 2023,[6] it is undisputed that the majority have not.  Therefore, the proposed Settlement Class is sufficiently numerous.  *See Wortman v. Air New Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018) (holding that a class of at least forty-one class members will presumptively meet the numerosity requirement, and plaintiffs may make a reasonable estimate as to class numbers); *see also A. B. v. Hawai'i State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022) (finding numerosity met where "a reasonable estimate of the size of the class well exceed[ed] 300 persons."); *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199 (N.D. Cal. 2007) (finding numerosity satisfied where plaintiffs estimated the class included more than ten-thousand individuals).

//

---

[4] *Spotlight: Don't Ask Don't Tell Resources*, U.S. DEPARTMENT OF DEFENSE, https://www.defense.gov/Spotlights/Dont-Ask-Dont-Tell-Resources/ (last visited January 3, 2025).
[5] *Id.*
[6] After Plaintiffs filed this lawsuit, the Department of Defense announced that it would initiate a records review of veterans who may have been discharged under Don't Ask Don't Tell and consider processing upgrades to eligible veterans. *See* U.S. Department of Defense, *Statement by the Secretary of Defense Lloyd J. Austin on the Twelfth Anniversary of the Repeal of 'Don't ask Don't Tell* (September 20, 2023), https://www.defense.gov/News/Releases/Release/Article/3531561/ (last visited January 3, 2025).  In October 2024, the Department of Defense announced it had granted relief to 824 veterans through that review.  *See Spotlight: Don't Ask Don't Tell Resources*, U.S. DEPARTMENT OF DEFENSE, https://www.defense.gov/Spotlights/Dont-Ask-Dont-Tell-Resources/ (last visited January 3, 2025).

### b) There are Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R.

Civ. P. 23(a)(2). The commonality requirement looks to "shared legal issues or a common core of

facts." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (abrogated on other grounds by

*Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022)). In other words, class claims "must

depend upon a common contention," which "must be of such nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central

to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 350 (2011). This case poses numerous overarching questions that are common to the proposed

Settlement Class, including:

- Whether Defendants violated class members' equal protection rights by (1) issuing DD-214s that identified class members' actual or perceived sexual orientation, while not identifying the actual or perceived sexual orientation of other veterans, and (2) maintaining a policy expressly disclaiming an intention to systematically remove indicators of sexual orientation on class members' DD-214s following the repeal of DADT;

- Whether Defendants' maintenance of a policy that refuses to systematically remove indicators of sexual orientation from DD-214s is a continuing violation of class members' constitutional right to privacy;

- Whether Defendants have violated due process by maintaining a policy that refuses to systematically remove sexual orientation indicators from DD-214s; and

- Whether the discharge upgrade and record correction processes that Defendants have put in place are constitutionally inadequate.

The central facts underlying the class claims are also common. For example, Defendants'

inclusion of sexual orientation indicators on the DD-214s of Settlement Class members uniformly

resulted from discharges under DADT and predecessor policies. Likewise, federal regulations and

Department of Defense directives explicitly require "uniformity among the Military Departments in

the rights afforded applicants in discharge reviews." 32 C.F.R. § 70.4(b)(2); Department of Defense

Directive 1332.41. As a result, the process for reviewing and correcting military records to remove

indicators of sexual orientation or obtain a discharge upgrade is the same or substantially similar for

all veterans in all branches of service. These common questions of law and fact meet the

requirements under Rule 23(a)(2).

*c)     Named Plaintiffs' Claims are Typical of the Class.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is to ensure that the interests of the named Plaintiffs align with the interests of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 2008), *overruled on other grounds by Wal-Mart*, 564 U.S. 338. The typicality requirement measures whether the named Plaintiffs' legal claims all arise from essentially the same conduct as their fellow class members' claims, and whether the named Plaintiffs and their fellow class members suffered the same legal injury. *Hanon*, 976 F.2d at 508.

Here, named Plaintiffs and the proposed Settlement Class all suffered the identical injury of a military discharge based on actual or perceived sexual orientation and all have DD-214s that contain indicators of sexual orientation.[7] Farrell Decl. ¶ 4; Gonzales Decl. ¶ 22; Sohn Decl. ¶ 4; Steffanides Decl. ¶ 21. Named Plaintiffs and the proposed Settlement Class are all challenging the continued inclusion of sexual orientation indicators on their DD-214s, Defendants' refusal to systematically correct DD-214s, and Defendants' constitutionally infirm process that places the burden on affected veterans to obtain corrections. *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (typicality requirement met when "the cause of the injury is the same—here, the Board's discriminatory policy and practice"). Named Plaintiffs' claims are therefore typical of the proposed Settlement Class.

*d)     Named Plaintiffs and Their Counsel Have, and Will Continue to, Fairly and Adequately Protect the Interests of the Class.*

The final Rule 23(a) requirement is that named Plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry asks whether there are any conflicts

---

[7] Defendants partially granted Plaintiff Hayden Powell's pending petition for correction during the course of this litigation, changing the narrative reason and separation code on her DD-214 to "Secretarial Authority." Given that she no longer meets the proposed class definition, Ms. Powell is not offered as a Class Representative, and the parties are concurrently filing a joint stipulation to dismiss her from the case. Rifkin Decl. ¶ 15.

of interest between named plaintiffs and the class they seek to represent, thereby guarding the right of absent class members not to be bound to a judgment without adequate representation by the parties participating in the litigation. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309 (N.D. Cal. 2018). The court must determine whether the class representatives "have any conflicts of interest with other class members" and will "prosecute the action vigorously on behalf of the class" through qualified counsel. *Staton v. Boeing Corp.*, 327 F.3d 938, 957 (9th Cir. 2003). Named Plaintiffs meet this requirement.

Named Plaintiffs have no interest antagonistic to, or in conflict with, the interests of the class members they seek to represent. Instead, the proposed Settlement Class members' interests are aligned because they all share the common goal of removing the discriminatory and harmful indicators of sexual orientation on their DD-214s and the resulting harms. Each named Plaintiff has also devoted significant time to the investigation, prosecution, and settlement of this case. Farrell Decl. ¶ 30; Gonzales Decl. ¶ 44; Sohn Decl. ¶ 34; Steffanides Decl. ¶¶ 36, 41. Named Plaintiffs have prioritized the primary goal to obtain relief on behalf of the entire class. Farrell Decl. ¶¶ 29, 33; Gonzales Decl. ¶¶ 43, 48; Sohn Decl. ¶¶ 33, 38; Steffanides Decl. ¶¶ 42-43.

Plaintiffs' counsel have also demonstrated their adequacy through their commitment to the class for the past three years, satisfying Rule 23(g). Rifkin Decl. ¶¶ 41-50; Kristen Decl. ¶¶ 3-9; Manthe Decl. ¶¶ 2-9; Corey Decl. ¶¶ 2-6. Plaintiffs' counsel undertook significant research and investigation in preparation for filing the complaint in this case. Rifkin Decl. ¶ 44; Kristen Decl. ¶¶ 6-7; Manthe Decl. ¶ 10; Corey Decl. ¶ 7. Counsel are well-versed in complex class litigation and LGBTQ+ civil rights actions, and devoted substantial time and expertise for the benefit of the class. Rifkin Decl. ¶¶ 41-50; Kristen Decl. ¶¶ 3-9; Manthe Decl. ¶¶ 2-9; Corey Decl. ¶¶ 2-6. Proposed Class Counsel have spent 4,577.1 hours investigating and prosecuting the case and incurred related litigation expenses. Rifkin Decl. ¶ 52. The case has been hard fought through Defendants' motion to dismiss and rigorous settlement negotiations. Rifkin Decl. ¶¶ 13, 16-22; Kristen Decl. ¶¶ 10-13; Manthe Decl. ¶¶ 12-15; Corey Decl. ¶¶ 9-12.

Accordingly, the Court should appoint Sherrill Farrell, James Gonzales, Jules Sohn, and Lilly Steffanides as Class Representatives and the Impact Fund, Legal Aid at Work, King & Spalding

LLP, and Hayes and Boone LLP as Class Counsel for the purposes of settlement.

2.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).

Federal Rule of Civil Procedure 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) is almost automatically satisfied in actions primarily seeking injunctive relief." *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 151 (N.D. Cal. 2015).

This case satisfies the Rule 23(b)(2) requirements because Defendants uniformly identified the actual or perceived sexual orientation of veterans discharged under DADT and predecessor policies on their DD-214s.  Further, Defendants are now subjecting all proposed Settlement Class members to the same policy that requires veterans with sexual orientation indicators on their DD-214s to individually petition for relief and carry the burden of demonstrating that relief should be granted.  A uniform injunction would cure each alleged violation of proposed Settlement Class members' Fifth and Fourteenth Amendment rights resulting from Defendant's uniform policies and procedures.  In other words, proposed Settlement Class members seek "relief from a single practice." *See Rodriguez*, 591 F.3d at 1126.  Therefore, this case is particularly suited to certification under Rule 23(b)(2).

**B.    The Proposed Settlement is Fair, Reasonable, and Adequate**

The Court should also preliminarily approve the settlement.  The Ninth Circuit maintains a "strong judicial policy" that favors settlement of class actions. *McKnight v. Uber Techs., Inc.,* No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  Preliminary approval is appropriate if the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2021).  Rule 23(e) requires the Court to consider whether representation of the class was adequate; whether the proposal was negotiated at arm's length; the adequacy of the relief provided for the class; and the treatment of class members relative to each other.  Fed. R. Civ. P. 23(e)(2)(A)-(D).

The Ninth Circuit has also identified specific factors that courts should consider when

evaluating whether a settlement is fair, reasonable, and adequate: the strength of plaintiff's case; risk, expense, complexity, and likely duration of further litigation; risk of maintaining class action status throughout trial; amount offered in settlement; extent of discovery completed and stage of the proceedings; experience and views of counsel; presence of a governmental participant; and reaction of class members to the proposed settlement. *In re Bluetooth*, 654 F.3d at 946 (quoting *Churchill*, 361 F.3d at 575).

When the class has not already been certified, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair," to ensure that "the settlement is not the product of collusion." *Id.* at 946-47. This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027). The proposed settlement in this case meets this standard.

1. The Proposed Settlement is a Product of Arm's Length Negotiations Among Experienced Counsel.

The fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arm's length negotiations conducted by capable and experienced counsel." *In re Netflix Priv. Litig.,* No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013). Defendants agreed to participate in settlement discussions after the Court ruled on their motion to dismiss. Rifkin Decl. ¶ 16. Counsel then engaged in nearly six months of weekly and bi-weekly negotiations that were adversarial in nature. Rifkin Decl. ¶ 19; Kristen Decl. ¶ 10; Manthe Decl. ¶ 12; Corey Decl. ¶ 9. Counsel made incremental progress each week through hard-fought compromises. *Id.* The proposed settlement was finally reached on January 3, 2025, after a substantial exchange of information, extensive investigation and analysis, and a full day of arm's-length negotiations in Washington, D.C., with Plaintiffs' counsel who have considerable expertise in class actions and civil rights litigation on behalf of LGBTQ+ individuals. Rifkin Decl. ¶¶ 20, 22; Kristen Decl. ¶¶ 11, 13; Manthe Decl. ¶¶ 13, 15; Corey Decl. ¶¶ 10, 12.

Plaintiffs and their counsel agreed to accept and propose this settlement to the Court because it provides substantial relief to tens of thousands of class members and avoids both the risk of loss in litigation and the further harm from delaying relief to tens of thousands of veterans who have already waited for decades. Rifkin Decl. ¶¶ 5, 34; Kristen Decl. ¶ 14; Manthe Decl. ¶ 16; Corey Decl. ¶_13. Courts recognize that the opinion of experienced counsel supporting settlement after arm's-length negotiations "is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). The settlement was zealously negotiated, and Plaintiffs' counsel strongly support the settlement as fair, reasonable, and adequate. Rifkin Decl. ¶¶ 5, 34; Kristen Decl. ¶ 14; Manthe Decl. ¶ 16; Corey Decl. ¶ 13.

2. The Strength of Plaintiffs' Claims and Risk of Continued Litigation Weigh in Favor of Approval.

In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should weigh the strength of Plaintiffs' case against the risk and expense of continued litigation. *Churchill*, 361 F.3d at 575. While Plaintiffs believe they have a strong case on the merits, they also recognize the inherent risks and uncertainty of litigation, including that the proposed Settlement Class could ultimately receive no relief at all, and understand the benefit of providing significant injunctive relief now. Rifkin Decl. ¶ 30. Plaintiffs also appreciate the value of working collaboratively with Defendants to draft complex procedures that involve each of the military service branches, an option that may not be available if the parties proceed with litigation to a final judgment. *Id.* ¶ 31.

Plaintiffs recognize that timeliness of relief is a crucial consideration to this proposed Settlement Class, giving an added value to resolving these claims without protracted litigation. Rifkin Decl. ¶ 30. All members of the proposed Settlement Class have lived with discriminatory DD-214s for more than a decade—many for multiple decades. *Id.* Indeed, some veterans did not receive relief in their lifetime. *Id.* If approved, the settlement will yield expedited, certain, and substantial recovery for the proposed Settlement Class, without the considerable burdens, risks, and delays of ongoing federal court litigation. *Id.*

3. The Relief Obtained in Settlement is Fair, Adequate, and Reasonable.

The relief negotiated by the parties is fair, adequate, and reasonable. The expedited

1  corrections and review processes established through the settlement allow for the prompt removal of

2  stigmatizing markers from the discharge paperwork of veterans separated pursuant to DADT or its

3  predecessor policies, protect class members' privacy, and do not require veterans to individually

4  navigate the lengthy and burdensome individual Board records correction process.  SA ¶ 6-8.

5  Discharge upgrades will enable class members to obtain federal, state, and local benefits they have

6  been denied.  ECF No. 43 ¶¶ 46-49, 69.  Critically, these relief measures will be implemented within

7  three months of final approval, which is a significant benefit to veterans who have waited decades

8  for a viable remedy and would otherwise face additional years of litigation in this case.  SA ¶¶ 6-7;

9  Rifkin Decl. ¶ 30.

10        The relief in the proposed settlement is also reasonable when compared with the potential

11  class recovery if Plaintiffs had fully prevailed on each of their claims.  *See* N.D. Cal. Class

12  Settlement Guidance ¶ 1(c).  All Plaintiffs raised the following federal constitutional claims against

13  Defendants: Equal Protection (claim one); Substantive Due Process, Privacy Interest (claim two);

14  and Procedural Due Process (claim four).  Plaintiffs Farrell, Gonzales, and Steffanides also raised a

15  Substantive Due Process, Liberty Interest (claim three) claim against Defendants.  The proposed

16  settlement provides full injunctive relief under claims one and two, and a better result could not have

17  been obtained after a successful trial on the merits.  The relief achieves the primary goal of this

18  litigation: to provide an accessible and effective avenue to remove the markers of sexual orientation

19  from veterans' DD-214s and implement a comprehensive and expedited DD-214 correction process

20  that alleviates the burdens of the current individualized process for the Settlement Class.

21        The proposed settlement does not achieve full relief under claims three and four because

22  veterans with Uncharacterized/Entry Level discharge codes will not be eligible for discharge

23  upgrades under the Settlement Agreement.[8]  SA ¶ 4(y), 4(bb), 4(ee), 7;  *See* N.D. Cal. Class

24  Settlement Guidance ¶ 1(c). Veterans with these codes were discharged under a protocol preventing

25  any discharge "characterization" from being assigned (whether Honorable or below Honorable)

26
_____

[8] Class members with Uncharacterized/Entry level discharges will still be eligible to receive
27  corrections to their DD-214s to remove sexual orientation indicators through the Administrative
Change Process.  SA ¶ 6.  All other Settlement Class members with discharge characterizations
28  below Honorable will be eligible for the Discharge Upgrade Review Process.  SA ¶ 7.

because the veteran was administratively separated before they served a specified minimum number of days (the specific minimum number of days has varied over time). Defendants represent that they do not have the authority to retroactively provide Honorable discharges to these veterans on a group-wide basis, and it is unclear whether Plaintiffs would prevail on this issue at trial. Rifkin Decl. ¶ 27. Plaintiffs recognize that litigating this narrow issue carries significant risk that is outweighed by a global settlement agreement that provides a path toward removal of sexual orientation indicators from DD-214s for *all* putative class members and provides the majority of putative class members discharged without an Honorable characterization the opportunity to opt into an expedited group application process for discharge upgrades. *Id.* Settlement Class members with Uncharacterized/Entry Level Discharges will not waive or release their individual claims under the terms of the settlement and retain their right to apply individually for discharge upgrades through the regular Board review process. SA ¶ 32-33, 46.

Less-than-total relief for all class members desiring discharge upgrades does not preclude a determination by the Court that the settlement is fair, adequate, and reasonable. A settlement is not judged solely against what might have been recovered had Plaintiffs prevailed at trial as to all aspects of their claims. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (noting that fairness of a proposed settlement "is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."); *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *4 (N.D. Cal. Sept. 13, 2011). Instead, a compromise generally involves both parties giving up something they might have won had they proceeded with litigation in exchange for saving costs and eliminating risks. *See Officers for Justice v. Civ. Serv. Comm'n & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). The proposed settlement ensures that the majority of Settlement Class members with discharge characterizations below Honorable can obtain discharge upgrade reviews through the expedited group review process and preserves the ability of the smaller subset of veterans who must proceed individually to do so.

The proposed release of claims included in the settlement is consistent with Ninth Circuit law. *See, e.g., Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing*

*Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) ("A settlement agreement may preclude a party from

bringing a . . . released claim [that] is 'based on the identical factual predicate as that underlying the

claims in the settled class action.'")); N.D. Cal. Class Settlement Guidance ¶ 1(b).  The release in the

settlement tracks the claims in the operative complaint and releases only the claims asserted on

behalf of the putative class in the complaint. SA ¶ 32.  All Settlement Class members maintain their

rights to apply individually through the usual Board review processes for any relief not obtained

through the procedures set forth in this settlement. SA ¶ 7(c)-(d).  All class members also maintain

their rights to pursue claims for damages because no such relief was sought as part of this case.  SA

¶ 32.

Comparable outcomes in similar Rule 23(b)(2) class cases challenging government policies

on constitutional grounds also weigh in favor of approving the settlement.  *See* N.D. Cal. Class

Settlement Guidance ¶ 11.  For example, in *Kennedy v. Whitley*, 539 F. Supp. 3d 261, 267-68 (D.

Conn. 2021) (order approving class action settlement)[9], U.S. Army veteran plaintiffs raised a due

process challenge in a Rule 23(b)(2) class action after they received discharge statuses below

Honorable based on misconduct attributable to diagnosed behavioral health conditions such as post-

traumatic stress disorder, traumatic brain injury, or military sexual trauma.  The certified class

included 22,000 veterans.  *See Kennedy v. Esper*, No. 16CV2010 (WWE), 2018 WL 6727353 at *4

(D. Conn. Dec. 21, 2018) (order granting class certification).  The class action settlement relief

approved by the court included the opportunity for veterans to opt into an automatic reconsideration

of the below Honorable characterizations of service and the implementation of new guidance

language in the Military Review Boards Standard Operating Procedures that direct how the Military

Review Boards must consider applications by veterans with certain diagnosed mental health

conditions.  *Kennedy*, 539 F. Supp. 3d at 267-68.  In *Kennedy*, the parties agreed to and the court

approved Plaintiffs' attorneys' fees and costs in the amount of $185,000.  *See Kennedy v. Whitley*,

No. 3:16-CV-2010 (CSH), (D. Conn. Mar. 17, 2021), ECF No. 218-1 at 5 (plaintiffs' motion for

final approval of class action settlement, including request for $185,000 in attorneys' fees and costs);

---

[9] The case name in 3:16-cv-02010-CSH varies because the person holding the post of U.S. Secretary of the Army changed throughout the case.

*Kennedy v. Whitley*, No. 3:16-CV-2010 (CSH), (D. Conn. Apr. 26, 2021), ECF No. 223 at 19 (order granting final approval of class action settlement including fees and costs).

In another Rule 23(b)(2) class action, *Ms. L. v. U.S. Immigration and Customs Enforcement,* No. 18-cv-00428 (S.D. Cal. Sept. 24, 2024), ECF No. 752, the parties reached a settlement for relief to redress the government's practice that separated plaintiff parents from their minor children at the U.S-Mexico border. The settlement included the implementation of new procedures to reunify hundreds of separated families in the settlement class, and the facilitation of settlement class members' asylum applications in a group to specially trained asylum officers. *Id.* In *Ms. L*, the Court approved $6,411,664.07 in attorneys' fees and costs under EAJA, and applying enhanced rates. *Ms. L*, No. 18-cv-00428 (S.D. Cal. Nov. 5 2024), ECF No. 757 at 1-2. The relief obtained by Plaintiffs in the instant case is similar in type and scope to the settlement relief obtained in *Kennedy* and *Ms. L*. *See* N.D. Cal. Class Settlement Guidance ¶ 11.

**C. The Notice Plan is Appropriate and Satisfies the Requirements of Rule 23.**

The proposed notice plan is appropriate under Rule 23(c)(2), which permits but does not mandate notice when a class is certified under Rule 23(b)(2) and provides only injunctive relief. *See* Fed. R. Civ. P. 23(c)(2)(A); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 4:20-cv-09077-JSW, 2024 WL 4868182, at *4 (N.D. Cal. Oct. 3, 2024). A class settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575 (quoting *Mendoza v. Tuscon Sch. Dist. No. 1*, 623 F.2d 1388, 1352 (9th Cir. 1980)). Here, the proposed notice plan utilizes multiple methods of communication to ensure that proposed Settlement Class members are made aware of the settlement, understand the relief it would provide, and know how to exercise their rights to object and/or participate.

The proposed Notice meets the requirements set forth in Rule 23. *See* Fed. R. Civ. P. 23(c); SA at Attachment B. The Notice provides relevant information to the proposed Settlement Class by using plain language to describe: (a) the nature of the action and the proposed settlement, including information on the definition of the Settlement Class, (b) what claims are released under the proposed settlement; and (c) the proposed Settlement Class members' right to object to the proposed

settlement and attorneys' fees and costs and to appear at the final approval hearing. *Id.*; *see also* N.D. Cal. Class Settlement Guidance ¶ 3 (providing additional guidance on class notice). The Notice also provides contact information all Parties' counsel. *Id.*

If the Court grants conditional class certification and preliminary approval of the settlement, the proposed Notice will be posted on a public-facing Department of Defense website and Plaintiffs' counsel's case website, and Plaintiffs' counsel will distribute the Notice to LGBTQ+ organizations, veterans' organizations, legal clinics, and related listservs across the country. SA ¶ 24(a)-(c); *see also* N.D. Cal. Class Settlement Guidance ¶ 3. Plaintiffs' counsel will also post summary information on social media channels. SA ¶ 24(d).

If the Court grants final approval, the settlement provides that Defendants will send letters by U.S. Mail to Settlement Class members who can be identified using Defendants' computerized records. SA ¶ 8. These letters will inform class members of the availability of a process to request changes to their DD-214s, but will not directly reference this lawsuit or sexual orientation to protect class members' privacy, given that mail delivery to last-known addresses does not guarantee confidentiality. While Defendants will not be able to identify Settlement Class members discharged prior to 1980 because they do not maintain computerized records from that time, all veterans who meet the class definition will be eligible for relief under the settlement, even if they do not receive a letter from Defendants. SA ¶ 6, 7; Rifkin Decl. ¶ 40. Defendants will also post information about how to access the Administrative Change Process and the Board Discharge Upgrade Review Process on the Department of Defense website and each military department's website, and Plaintiffs' counsel will post similar information on their case website along with links to the Department of Defense website. SA ¶ 9, 11, 24(d).

This notice plan is reasonable given the size, composition, and particular privacy concerns of this Settlement Class, and the nature of the injunctive relief provided.

### D. The Attorneys' Fees and Costs Provided for in the Settlement are Reasonable.

The Settlement Agreement includes an agreement that Defendants will pay Plaintiffs $350,000 in attorneys' fees and costs pursuant to EAJA. This provision is reasonable and should be approved by the Court as part of its Final Approval Order. EAJA entitles litigants to recover

attorneys' fees and costs from the federal government if: (1) they are the prevailing party; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. *See Perez–Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir.2002). EAJA also provides for the recovery of costs that are ordinarily billed to a client and that are routine under all other fee statutes. *See Int'l Woodworkers of Am. AFL-CIO, Local 3-98 v. Donovan*, 769 F.2d 1388, 1392 (9th Cir. 1985), *amended*, 792 F.2d 762 (9th Cir. 1985).

Plaintiffs are a prevailing party under EAJA because the relief obtained through the settlement materially alters the relationship of the parties and Court approval of the settlement would judicially sanction this alteration. *See Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604–05 (2001) (holding that a litigant is a prevailing party if the lawsuit resulted in a "material alteration of the legal relationship of the parties" and the alteration was "judicially sanctioned"); *Perez–Arellano*, 279 F.3d at 793 (holding that the *Buckhannon* rule regarding prevailing party status governs EAJA fee applications). The "material alteration" inquiry asks whether the relief modifies a defendant's behavior in a way that directly benefits the plaintiff. *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1087 (9th Cir.2003) (citing *Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002)). Here, Defendants' implementation of expedited DD-214 correction and review processes under the settlement agreement benefits the class of veterans separated pursuant to DADT and its predecessor policies. For purposes of settlement, Defendants also do not contend that the government's position was substantially justified or that an award of attorneys' fees and costs is unjust. *See* 28 U.S.C. § 2412(d)(1)(A); *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir.1988) (holding that a prevailing party in litigation against the government receives a rebuttable presumption that it is entitled to EAJA fees unless the government is able to show its position was substantially justified); Rifkin Decl. ¶ 35.

The requested award of $350,000 in total attorneys' fees and costs is reasonable. When

calculated at the 2023 EAJA statutory maximum rate of $244.62 per hour,[10] this compensates Plaintiffs' attorneys for approximately 1430.8 hours of work. Rifkin Decl. ¶ 54 . Plaintiffs' counsel spent approximately 4,577.1 hours on this matter and incurred approximately $17,000 in costs and litigation expenses. Rifkin Decl. ¶ 52. The requested fees and costs are an approximately 70% reduction of Plaintiffs' lodestar at the EAJA rate, which more than accounts for the diligent exercise of billing judgment and adjustments for the application of 2021 and 2022 EAJA rates for work performed in those years. Rifkin Decl. ¶ 54; Kristen Decl. ¶ 20; Manthe Decl. ¶ 22; Corey Decl. ¶ 19. The requested fees are also reasonable in light of courts' discretion to award a fee higher than the statutory EAJA rate based on special factors, such as when plaintiffs' attorneys possess a specialty practice or distinctive knowledge and skills, the distinctive knowledge and skills are necessary to the litigation in question, and similar skills could not have been obtained at the statutory rate. *See Pirus v. Bowen*, 869 F.2d 536, 541-42 (9th Cir. 1989); *Ms. L*, No. 18-cv-00428 (S.D. Cal. Nov. 5, 2024), ECF No. 757 at 1-2. Plaintiffs could reasonably argue this special factor applies here, but in the interest of obtaining timely relief for the Settlement Class, Plaintiffs forego seeking these higher rates.

At the preliminary approval stage, courts "must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class.'" *Briseno v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021); N.D. Cal. Class Settlement Guidance ¶ 6. The Court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Here, the settlement provides the Settlement Class substantial benefit consistent with the injunctive relief sought in the operative complaint, and the fees were negotiated independent of the injunctive relief set forth in the settlement. *See Stewart v. Applied Materials, Inc.*, No. 15-cv-02632, 2017 WL 3670711, at *5–6 (N.D. Cal. Aug. 25, 2017) (approving fees where settlement "provide[d] for all the benefits the class members were denied"); Rifkin Decl. ¶ 26, 55. *See also Vargas v. Ford Motor Co.*, No. cv 1208388, 2020 WL 1164066, at

---

[10] United States Courts for the Ninth Circuit, *Statutory Maximum Rates Under the Equal Access to Justice Act*, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited January 3, 2025)

*12 (C.D. Cal. Mar. 5, 2020) (clear-sailing provision was "not problematic" when, among other things, fees were negotiated separately from class relief). Further, the settlement is not conditioned upon the Court's approval of attorneys' fees or costs. The Court should preliminarily approve the Settlement Agreement, including the provision of $350,000 reasonable attorneys' fees and costs.

> ### E. The Court Should Enter the Proposed Order and Set a Final Approval Hearing Date.

In the concurrently filed proposed order, Plaintiffs request that the Court conditionally certify the Settlement Class; preliminarily approve the class settlement, including the proposed notice plan and award of reasonable attorneys' fees, costs and expenses; appoint Sherrill Farrell, James Gonzales, Julianne ("Jules") Sohn, and Stephan ("Lilly") Steffanides as Class Representatives; appoint the Impact Fund, Legal Aid at Work, King & Spalding LLP, and Hayes and Boone LLP as Class Counsel; dismiss Hayden Powell without prejudice, and set a final approval hearing approximately 60 days after the Court enters its preliminary approval order.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for conditional class certification for settlement purposes and for preliminary approval of the settlement, including notice and attorneys' fees, and enter the proposed order submitted concurrently herewith.

Dated: January 6, 2025

LEGAL AID AT WORK
IMPACT FUND
KING & SPALDING, LLP
HAYNES AND BOONE, LLP


By:_____
    Fawn Rajbhandari-Korr


    Jocelyn Larkin (SBN 110817)
    Lindsay Nako (SBN 239090)
    Lori Rifkin (SBN 244081)
    Fawn Rajbhandari-Korr (SBN 315888)
    Meredith Dixon (SBN 346864)

IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
Telephone: (510) 845-3473
jlarkin@impactfund.org
lnako@impactfund.org
lrifkin@impactfund.org
fkorr@impactfund.org
mdixon@impactfund.org

Elizabeth Kristen (SBN 218227)
Lynnette Miner (SBN 304276)
LEGAL AID AT WORK
180 Montgomery Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
ekristen@legalaidatwork.org
lminer@legalaidatwork.org

David K. Willingham (SBN 198874)
Rachel Yeung (SBN 317361)
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4433
dwillingham@kslaw.com
ryeung@kslaw.com

Radha Manthe, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
rmanthe@kslaw.com

Chelsea Corey, *pro hac vice*
HAYNES AND BOONE, LLP
50 S. Tryon Street, Suite 700
Charlotte, NC 28202
Telephone: (980) 771-8251
chelsea.corey@haynesboone.com

*Attorneys for Plaintiffs*